O’NIELL, O. J.
 

 This case arose from the political strife of the campaign preceding the Democratic primary election held on the 13th of September, 1932, for the nomination of a candidate for United States Senator, candidates for Congressman, and a candidate for public service commissioner from the Second district, besides candidates for certain local offices.
 

 In August, 1932, Dudley J. Le Blanc, who was a candidate for the Democratic Party nomination for the office of public service commissioner, from the Second Public Service Commission district, filed suit in the district court in Lafourche parish, and obtained from Judge R. B. Butler a temporary injunction against E. R. Hoffmann, Hubert A. Lafargue, G. E. Payne, and P. D. Martinez, preventing their filing, as candidates for the nomination to which Le Blanc aspired, a list of names from which the Democratic executive committee should draw the names of the persons to serve as election commissioners. At the same time, Le Blanc filed a similar suit in the district court in Ascension parish, also presided over by Judge Butler, and obtained a writ of injunction against five residents of that parish, namely, Mateo J. Randozza, J. D. Villar, Lester E. Wright, Ernest Capello, and Joseph A. Maher, preventing their furnishing — as candidates for the nomination for which Le Blanc was a candidate — lists of names from which the Democratic executive committee of that parish should draw the names of the persons to serve as election commissioners.
 

 Le Blanc contended that the defendants, who had qualified as candidates for the nomination for which he (Le Blanc) was a candidate, were not, in reality, or bona fide, candidates for the nomination for ‘which they pretended to be candidates, but were what were generally called “dummy candidates,” who merely lent their names for the fraud-, ulent purpose of obtaining all, or nearly all, of the election commissioners favorable to
 
 *623
 
 a candidate opposing Le Blanc, and for the purpose, therefore, of depriving Le Blanc of his just proportion of representation among the election commissioners at each polling booth throughout the district.
 

 It was agreed between the plaintiff and the defendants in the two suits that the decision to be rendered in the suit of Le Blanc v. Hoffmann et al., in Lafourche parish, should govern the suit filed in Ascension parish.
 

 The suit of Le Blanc v. Hoffmann et al. was brought to this court on a writ of certiorari, and alternative writs of prohibition and mandamus, at the instance of the defendants. They contended, as they had pleaded in the district, court, that the court had' not jurisdiction over Le Blanc’s .complaint, and that he had no cause or right of action. One of the justices of the Supreme Court being absent from the state, and the remaining six members of the court being evenly divided in opinion as to how the case should be decided, Judge Archibald T. Higgins, of the Court of Appeal for the parish of Orleans, was called upon to take part in the decision; and, by his concurrence with three members of this court, Judge Butler’s ruling was reversed, and Le Blanc’s suit was dismissed. It was held that, according to section 11 of Act No. 97 of 1922, known as the Primary Election Law, Le Blanc’s only remedy was to file his objection with the executive committee, within five days after the last day allowed for the filing of notifications to become candidates; and that, when the five days had expired, without Le Blanc’s having' filed a complaint with the committee, no court could entertain his complaint. See Le Blanc v. Hoffmann, 175 La. 517, 143 So. 393. The decision was rendered on the 19 th of August, 1932. Le Blanc applied for a rehearing, and, while his.application was ponding, the nine defendants in. the two suits withdrew their names as candidates, and so notified the secretary of state, and the assistant secretary of state so notified, officially, one of the members of this court, on the 2d of September, 1932. Thereupon a rehearing was granted, and, on the rehearing, three justices, including Justice (pro tempore) Higgins, voted to reinstate the original opinion and decree of this court; the three justices who had dissented adhered to their dissenting opinion; and one justice expressed the opinion that the writ of injunction which Judge Butler had issued should be dissolved only in so far as it might affect any past action of the committee, but should be reinstated as to any action which the committee might attempt to take in the future, in the way of recognizing the nine candidates who had withdrawn. That justice’s expression of opinion, therefore, became, in effect, the final decree of this court. It was rendered on the Sth of September, 1932.
 

 In the meantime, that is, on the 23d of August, 1932, Edwin S. Broussard, a candidate for the Democratic Party nomination for United States Senator, and George K. Perrault, a candidate for the Democratic Party nomination for Congressman from the Seventh congressional district, and Dudley J. Le Blanc, candidate for public service commissioner, brought suit in the district court in Evangeline parish, against the Democratic executive committee of the parish, and ob
 
 *625
 
 tained from Judge B. H. Pavy a temporary restraining order, and a rule to. show cause why an injunction should not issue, preventing the committee from using the lists of names of persons to serve as commissioners of election furnished by the nine so-called “dummy candidates” who were the defendants in the two suits which Judge Butler had decided, but which had not been disposed of finally by this court.
 

 On the 25th of August, 1932, Dolsey Guillory, as a member of the Democratic executive committee for Evangeline parish, and the nine so-called “dummy candidates” for the office of public service commissioner, filed a petition in this court for writs of certiorari, prohibition, and mandamus, to set aside Judge Pavy’s restraining order, to prohibit his issuing an injunction against the Democratic executive committee for the parish of Evangeline, and to compel the committee to use the names furnished by the so-called “dummy candidates,” as well as the names furnished by the other candidates, in the drawing of commissioners for the primary election to be held on the 13th of September.
 

 The member of this court to whom the petition for the writs was allotted, with the concurrence of two. other members of the court, issued the writ of certiorari to" bring up the record, and a rule to show cause why the relief prayed for by the relators should not be granted, and, at the same time, ordered all further proceedings in the district court stayed until the further orders- of this court. The rule was issued on the 25th of August and was made returnable on the 29th of August, 1932. On that day, when the court toot up the matter for consideration, it was observed that, on account of the delay (14 days) allowed by law for a rehearing when the court decides a case under the court’s supervisory jurisdiction (section 5 of Rule XII, 171 La. xiii), it was “impossible for the court to render a decree which would become executory before the date of the primary election.” For that reason, and without deciding upon the merits of the case, this, court’s decree was merely “the rule issued herein is recalled.” That decree was subscribed to by the three members of the court who had dissented from the decision in the case of Le Blanc against Hoffmann and others, from Lafourche parish, and was concurred in by the justice who had issued the rule on the 25th of August, which was then under consideration, but he declared that, in concurring in the result for the reasons, stated, he adhered to his opinion that the district court was without jurisdiction. Another member of the court declared that, without expressing any opinion as to the status of the restraining order issued by the court below (i. e., since the issuance of the writ and stay order by this court), he realized that it was then too late to permit the handing down of any decree which would become effective in time to afford any practical relief to any party therein, and was of the opinion that the court should pretermit all further consideration of the ease, as presenting just then only a moot question. Another member of the court recused himself, and another, as we have said, was absent from the state.
 

 A majority of the members of the Democratic executive committee for the Parish
 
 *627
 
 of Evangeline, namely, Dolsey Guillory, Charles Armand, Odey Deshotels, P. E. Eontenot, and Laurent Fuselier (Guillory having the proxies of three other members of the committee), took the position that the relators (Guillory being one of them) in the proceeding in which this court had, on the 29th of August, recalled the rule which had been issued on the 25th of August, were entitled to a delay of fourteen days in which to apply for a rehearing, and that therefore the temporary stay order, which one-of-the members of this court, with the concurrence of two others, had issued on the 25th of August, should remain in force for fourteen days after the 29th of August, and that the temporary restraining order which Judge Pavy had issued remained unenforceable during that period. The stay order which had been issued by one of the members of this court -on the 25th of August was issued in connection with the writ of certiorari and the rule to show cause, and declared merely that, until the further orders of this court, all proceedings against the relators in the district court should be stayed and suspended. Taking the position that the stay order should remain in force for fourteen days after the 29th of August — the date on which the rule was recalled — the majority of the members of the executive committee, whom we have named, met on the 30th of August, 1932, and proceeded to use the lists of names which had been furnished by the nine so-called “dummy candidates,” as well as the lists furnished by the other candidates, in the drawing of the names of the persons to serve as election commissioners.
 

 Thereupon Broussard, Perrault, and.. Le Blanc, the original plaintiffs in the suit in the district court, again appeared in that court, and, setting forth the proceedings which had been had, and those which were yet to be had, obtained another restraining order against the Democratic executive committee, and a rule on the committee to show cause on the 3d day of September, 1932, why the drawing of commissioners on the 30th of August, 1932, should not be set asidej and why the committee should not proceed to draw the names of the commissioners without using the lists furnished by the so-called “dummy candidates,” and why Messrs. Guillory, Armand, Deshotels, Eontenot, and Euselier should not be punished for being in contempt of the authority of the court. They, answering the rule, averred that the district court was without jurisdiction in the premises; that they were not disobeying the' temporary restraining order originally 'issued by the district court, because it was suspended for fourteen days after the Supreme Court had recalled its rule, and that they were so advised by the Attorney General of Louisiana. The matter was taken up by Judge Pavy on the 3d of September, 1932, and, after hearing the parties, he made the rule absolute, and decreed that the drawing of commissioners, by the Democratic executive committee, on the 30th of August, was done in violation of his restraining order, and was null. At the same time, and in the same judgment, Judge Pavy declared that he took judicial cognizance of the fact that' the nine so-called “dummy candidates” had in fact withdrawn their names as candidates, and the judge therefore ordered the executive committee to draw the. names of the commissioners of election, without using the lists
 
 *629
 
 furnished by the so-called dummy candidates ; and, at the same time, the judge found Messrs. Guillory, Armand, Deshotels, Fontenot, and Fuselier guilty of being in contempt of the authority of the court, and sentenced them to imprisonment in the parish jail for ten days.
 

 Thereupon Messrs. Guillory, Armand, Deshotels, Fontenot, and Fuselier, individually and as members of the Democratic executive committee, brought the present proceeding in this court, for writs of certiorari, prohibition, and mandamus, to set aside Judge Pavy’s injunction and sentence for contempt, and to compel him to rescind the orders which he had rendered against the relators. The petition to this court was filed on the 7th of September, 1932 — only six days before the date set for the primary election. The member of the court to whom the petition was allotted ordered a writ of certiorari to be'issued, directing Judge Pavy to send up the record of the proceedings, or a certified copy thereof, on or before the 2d day of January, 1933, and ordered Judge Pavy and Messrs. Broussard, Perrault, and Le Blanc to show cause on that date why the relief prayed for by the relators should not be granted, and ordered that all proceedings against the relators in the district court should be stayed and suspended until the further orders of this court. The writ of certiorari and stay order, of course, put an end to the power of Judge Pavy to enforce his decree before the primary election would be held.
 

 It is apparent that the case, in this court, was a moot case from the beginning, except for the question of the authority of Judge Pavy to enforce his sentence for contempt of court. And, as to that, the judge himself says, in his answer to the rule, that, at this late date, the issues in the case have become moot questions — that he could not accomplish anything by enforcing his sentence for contempt — and that he has therefore no desire now to enforce it. From which we infer that Judge Pavy’s only purpose in imposing the sentence for contempt was to enforce his decree, and that, as it is now impossible to enforce the decree, the judge will remit the sentence, if in fact he has not already remitted it. The other respondents, Messrs. Broussard, Perrault, and Le Blanc, of course, ceased to have an interest in the imposition of Judge Pavy’s sentence for contempt when it became impossible for Judge Pavy thereby to enforce the decree which he had rendered in favor of Messrs. Broussard, Perrault, and Le Blanc. They therefore have not seen fit to answer the rule which was issued on the 7th of September. The relators have not filed a brief, or shown any further interest in the matter; and from their indifference we assume that they are satisfied with Judge Pavy’s declaration that he has no desire or intention to enforce his sentence for contempt of court. Our conclusion, therefore, is that the parties originally concerned have lost all interest in the case, and that the proceedings in this court are therefore virtually abandoned and ought to be dismissed.
 

 The proceedings are dismissed.
 

 OVERTON, J.,
 

 recuses himself, because his brother was a party by intervention to the injunction suit out of which this proceeding grows.