The petition of the relator in the above entitled and numbered case having been duly considered,
It is ordered that a writ of certiorari issue herein, directing the Honorable W. Carruth Jones, judge of the Nineteenth judicial district court for the parish of East Baton Rouge, to transmit to the Supreme Court of Louisiana, on or before the 26th day of November, 1934, the record, or a certified copy of the record, of the proceedings complained of by the relator herein, to the end that the validity of said proceedings may be ascertained.
It is further ordered that the aforesaid judge of said court and the respondent, Thomas F. Porter, shall show cause, in this court, on the date aforesaid, at 11 o'clock a.m., why the relief prayed for in the petition of the relator should not be granted.
It is further ordered that in the meantime and until the further orders of this court, the orders, writs, and judgments issued against E.A. Conway, secretary of state in said district court shall be stayed and suspended.
Granted at New Orleans, September 26, 1934.
H.F. BRUNOT, J.R. LAND, A.T. HIGGINS, Associate Justices.
This matter comes before us on an application by the Secretary of State for remedial writs whereby he asks to be relieved from the effect of two preliminary writs of injunctions, which are said to have been illegally and improvidently issued by the district judge. *Page 490 
Plaintiff, claiming to be the Democratic nominee for Associate Justice of the Supreme Court of the State of Louisiana for the Third Supreme Court District for a full term of fourteen years, sought a prohibitory injunction from the district judge of the Nineteenth judicial district for the parish of East Baton Rouge, to restrain the defendant, the Secretary of State, from issuing ballots to be used in the primary election called by the Democratic Executive Committee for the Third Supreme Court District for October 9, 1934, and to restrain the defendant from printing on the official ballots to be used in the general election of November 6, 1934, the name of any person other than that of plaintiff as Democratic nominee for the said office; and a mandatory injunction commanding the defendant, Secretary of State, to recognize plaintiff as the nominee of the Democratic Party for the said office and commanding him to compile and canvass the returns of the election of September 11, 1934, and promulgate the same, and to declare plaintiff the Democratic nominee for the said office, and commanding the defendant, the Secretary of State, to print on the official ballots to be used in the said general election, the name of the plaintiff as the Democratic nominee for the office of Associate Justice of the Supreme Court of Louisiana from the Third Supreme Court District.
Plaintiff alleges that the Third Supreme Court District, under article 7, § 9, of the State Constitution, is composed of the parishes of Calcasieu, Jefferson Davis, Allen, Arcadia, Evangeline, Cameron, Beauregard, Lafayette, Avoyelles, Rapides, and Grant; that under section 6 of Act No. 97 of 1922, *Page 491 
the State Central Executive Committee of the Democratic Party, on July 3, 1934, called a primary election to be held on September 11, 1934, for the purpose of nominating a Democratic nominee for Associate Justice of the Supreme Court from the Third Supreme Court District, to serve the term from January 1, 1935, until fourteen years from that date; that plaintiff and Justice Winston Overton duly qualified as sole candidates for nomination for the said office; that on September 9, 1934, Justice Winston Overton died, leaving plaintiff as the sole candidate for the nomination for said office; "that under section 30 of Act No. 97 of 1922, whenever it shall be found there is but one candidate for any particular office for which a primary has been called, the committee ordering the said primary must be immediately convened, and the person so entering and being thus unopposed shall be declared to be the nominee of the party that ordered the said primary for the particular office for which he has offered, without the necessity of holding a primary election for said office;" "that under the said section of the said act, if, after the date has passed on which candidates are allowed to enter and file their notification in a primary, one or more of the rival candidates for any particular office dies, additional candidates for that office are permitted to enter and file their notification for a period of 5 days after such death, but not when death occurs within 7 days from the day fixed for the primary election, and that the death of the Honorable Winston Overton occurred within 7 days before September 11, 1934, and it thereupon became the mandatory duty of the said committee to immediately convene and declare your petitioner the nominee of the *Page 492 
Democratic party for Associate Justice of the Supreme Court from the Third Supreme Court District, without the necessity of holding a primary election for the said office;" "that a meeting of the said committee was held on September 15, 1934, whereupon the said chairman, T. Arthur Edwards, notified the committee of the law, and a resolution declaring your petitioner the nominee of the Democratic party for the said position was duly made and seconded, but, in spite of that fact, the said committee declined to pass the said resolution, ignoring the clear provisions of the law, and passed a resolution calling a second primary for said position for October 9, 1934;" "that the powers of that committee to call a first primary election were exhausted by the committee's call on July 3, 1934, and that under said primary law, and especially section 27 thereof, the said committee has no power to call a second primary under any circumstances whatsoever;" "that by reason of the fact above set forth and independent of the illegal action of the said committee in refusing to declare your petitioner the nominee for said office and in ordering the second primary, your petitioner is, in truth and fact, the legal nominee for said office and entitled to have his name placed upon the ballots to be used in the general election to be held on November 6, 1934;" that, in the alternative, it was physically impossible for the chairman of the Third District Supreme Court Executive Democratic Committee to immediately convene the committee and declare him the nominee, and stop the primary election of September 11, 1934, from being held, because the members thereof were scattered throughout the eleven parishes constituting the district, with the result that the *Page 493 
said primary election of September 11th was held and plaintiff received a vast majority of the votes cast by the voters of the district for the nomination; that under section 25, paragraph 14, of the Primary Law, returns of a primary election must be made and the returns of the primary election of September 11, 1934, were made to the Secretary of State; that under section 27 of the act, it was the duty of the Secretary of State to immediately proceed to tabulate and compile the said returns and promulgate them in the Official Journal within eight days after the date of the said primary election, and forward a certified copy thereof, under his signature and seal of office, to the chairman of the committee ordering the primary; and that plaintiff has failed to carry out his duties in this respect; "that it is the duty of the Secretary of State, to print, and it is the right of your petitioner to have printed his name upon the ballots for the general election to be held on November 6, 1934, as the nominee of the Democratic party for the Third Supreme Court District, but petitioner is informed and on such information alleges that the Attorney General of Louisiana, has rendered an opinion, advising the Secretary of State not to recognize petitioner as the Democratic nominee for said position and said Secretary of State declares that he will not so recognize petitioner and that he will not print petitioner's name on the ballots to be used in the general election of November 6, 1934, but will print the name of any candidate for the said office who shall receive the greatest number of votes at the electoral and so-called second primary to be held on October 9th, 1934;" "that the nomination claimed by petitioner is, as a matter of fact, equivalent to *Page 494 
an election, and petitioner by virtue of the said nomination, has a vested right in the said office and the deprivation of such right is violative of his rights under the Constitution and laws of the State of Louisiana and Constitution and Laws of the United States of America, particularly section 15 of article 4 of the Constitution of Louisiana and the Fourteenth Amendment of the Constitution of the United States;" "that the cost to the State of Louisiana and to each of the parishes comprised in said District for an election, runs into many thousands of dollars and that the holding of the said illegal election on October 9th, 1934, will work a great and irreparable injury to your petitioner, both as the legal nominee for said position, and as a citizen and a tax payer, and will cause confusion and impede the clear expression of the public will at the polls at said general election, and that the said threatened injury will not be compensable in money;" and "that your petitioner has no adequate remedy at law among other things in this that the legal delays incident to petitioner getting a final judgment at law are such that petitioner could not anytime thereby get the relief herein sought so that his rights could be judicially and effectively enforced * * *."
The defendant filed, separately, certain exceptions and in each instance reserved the benefit of the exceptions previously overruled, as follows:
1. That the court was without jurisdiction ratione materiæ, because the question presented was purely a political one, involving a matter placed by the Legislative and Executive Departments of the State of Louisiana, solely within the jurisdiction of the *Page 495 
Executive Committee of the Third Supreme Court District, without any statutory grant of authority to the judicial department to review the actions of the committee which had neither failed to carry out the provisions of the Primary Law, nor violated any of its provisions, but was attempting to carry out the purpose, letter, and spirit of the Primary Law, to have an expression of the will of the majority of the electorate as to whom they would choose as nominee for the important office of Justice of the Supreme Court from that district for a full term of fourteen years; and that the committee did not act arbitrarily or unreasonably but fully within the authority and power vested in it by the provisions of the Primary Law, and particularly of section 28 of Act No. 97 of 1922.
2. That there was a nonjoinder of proper parties defendant, in that the Democratic Executive Committee of the Third Supreme Court District of the State of Louisiana, and John B. Fournet, who qualified as a candidate to run in the primary of October 9, 1934, were the real parties at interest and necessary parties to the suit and had not been joined therein.
3. That the petition stated neither a right of action nor a cause of action, since, under section 30 of Act No. 97 of 1922, as amended by Act No. 215 of 1924, the plaintiff was not entitled to be named as the Democratic nominee and the committee was not authorized, empowered, or directed, either by the provisions of the statute or by the spirit of the law, to declare the plaintiff the nominee for the said office.
Each of the exceptions in turn were overruled by the trial judge and the defendant, *Page 496 
with full reservation of all of his rights under the respective exceptions, for return and answer to the rule nisi admitted practically all of the facts alleged in plaintiff's petition, but denied all of the conclusions sought to be drawn therefrom, and particularly that plaintiff was entitled to the nomination under section 30 of Act No. 97 of 1922, or that he had been elected by a vast majority of the votes on September 11, 1934, and annexed as a part of the return a certified copy of the minutes of the meeting of the Democratic Executive Committee of the Third Supreme Court District held on September 15, 1934, together with a copy of the resolution adopted by the committee.
Further answering, defendant denied that it was his duty to declare plaintiff the nominee, or to compile, canvass, and promulgate the returns of the alleged election on September 11th. Defendant also denied that the plaintiff would suffer irreparable injury if the injunctions were not granted, averring that if plaintiff's position were sound he had an adequate remedy at law in the form of a writ of mandamus, to compel the Third Supreme Court District Executive Democratic Committee to declare him the party nominee. The return or answer to the rule also contains a reiteration of practically all of the legal points raised in connection with the exceptions and concludes:
"Under plaintiff's interpretation of section 30, he would still be the nominee if he had killed Justice Overton, whether by design or as a result of the heat of passion brought about by campaign differences or argument."
The trial court made the rule absolute and granted the relief prayed for by issuing both *Page 497 
the prohibitory and the mandatory preliminary injunctions.
Counsel for the defendant then notified the district judge and opposing counsel of their intention to apply to this court for writs of certiorari, prohibition, and mandamus.
The application for the writs is in proper form and sets forth in detail, at length, the history of the whole controversy, with copies of all of the pleadings and documentary evidence offered in the trial of the rule.
Relator, in his application for remedial writs, reiterates all of the points and issues raised in the lower court and complains of the adverse rulings and judgment of our learned brother below.
In considering applications for remedial writs, this court must consider whether or not the relator has an adequate remedy by appeal. If he has, the writs are refused. If he has not, as in the case at bar, then the issues presented in his application are considered. In connection with the denial or granting of writs, there is no hearing before the court other than the application and briefs in support thereof and also the briefs in opposition thereto. If the court concludes that relator's complaints are unfounded, that amounts to a final judgment, as far as he is concerned, even though he has never been heard in open court. We must of necessity form some conclusions in reference to the questions raised as to the proper remedy employed and/or merits of the controversy before either granting, or refusing to grant, the writs.
In support of the exception to the jurisdiction of the court, ratione materiæ, it is argued *Page 498 
that the Legislature, in Act No. 97 of 1922, conferred jurisdiction on the courts in reference to primary elections in only two instances:
1. Under section 11, to review the actions of the Executive Committee in disqualifying a candidate; and
2. Under section 27, to hear and determine contests between the parties claiming the nomination.
In Collin v. Knoblock, 25 La. Ann. 263, 265, the Supreme Court held:
"It is well settled that the judiciary have no warrant of authority to exercise jurisdiction in matters of elections unless it be expressly delegated by the co-ordinate branch of the Government controlling the political department."
In State v. Foster, 111 La. 939, at page 943, 36 So. 32, 33, the Supreme Court said:
"`The jurisdiction of the courts in these matters is as purely statutory as that of public officers, and must be invoked in the manner prescribed by law. The courts will pass only upon matters of which they have a clear grant of jurisdiction.' 10 Amer. 
Eng. Ency. Law (2d Ed.) pp. 660, 661.
"Hence, as far as party nominations are concerned, the decision of disputes rests with the party whose nomination is claimed. TheLegislature may invest jurisdiction in certain public officers orthe courts. If such jurisdiction be not vested, the decisionrests with the party, and the courts cannot interfere in thematter."
In Roussel v. Dornier, 130 La. 367, 57 So. 1007, 1008, 39 L.R.A. (N.S.) 826, the Supreme Court held: *Page 499 
"In the absence of jurisdiction conferred by legislative action, the political committee, appointed under the statute regulating primary elections, are without the power, and the courts are without the jurisdiction to determine who shall be the candidate or who shall not be the candidate because of the eligibility of the one and the ineligibility of the other. The question is limited to authority conferred or not conferred by the primary election law."
In the case of Reid v. Brunot, 153 La. 490-495, at page 493, 96 So. 43, 44, involving a nomination as Associate Justice of the Supreme Court, we find the following language:
"It is a well-settled and established principle of law that all elections and all matters relating to or affecting the same, belong to the political department of the government and are, therefore, beyond the control of the judicial power, in the absence of special constitutional or statutory authorization.
"No person has a right to invoke the aid of the courts in an election contest, unless there be some express law vesting thecourts with jurisdiction and conferring such right of action uponthe contestant.
"`The right to contest an election is not a natural right but exists, if at all, in the Constitution or statutes.' 20 C.J. 222. * * *
"It is likewise urged that, under the constitutional grant to the courts to hear and determine the right to office or other civil and political rights, the present controversy is cognizable by the judicial tribunals.
"In so far as the last-mentioned contention is concerned, it is to be noted that section 35 of article 7 of the Constitution of 1921, conferring *Page 500 
jurisdiction upon the courts, in cases where the right to office or other political position or civil or political rights are involved, is the same provision as was contained in article 109 of the Constitutions of 1898 and 1913.
"In State v. Foster [111 La. 939, 36 So. 32], cited supra, this court interpreted this provision as contained in the Constitution of 1898, holding that the grant of authority therein did not include the question of party nominations, `which must be determined by the party itself or by certain public officials as provided by statute.'"
"In State v. Judge, 13 La. Ann. 89, this court said:
"`The contesting of votes is not a judicial function, only so far as made such by special statutes. Indeed, some may have gone so far as to question whether it is not wholly a matter ofadministration which cannot with propriety be referred to the judicial tribunals at all. At any rate it is clear that suchtribunals cannot usurp any greater control over this business than is specially imposed upon them by law. In the absence of a statutory authorization, they are without jurisdiction of the matter, ratione materiæ.'
"During the lapse of more than 60 years since that decision was rendered, this court has never questioned its correctness. On the contrary, it has been expressly affirmed in many cases. It was cited with approval in State v. Police Jury, 41 La. Ann. 846, 6 So. 777, and its doctrine was accepted and adopted in State v. Foster, 111 La. 1087, 36 So. 200, Darbonne v. Village of Oberlin, *Page 501 121 La. 641, 46 So. 679, and Roussel v. Dornier, 129 La. 930, 57 So. 272, 41 L.R.A. (N.S.) 557."
In the case of State v. Foster, 111 La. 939, at page 943, 36 So. 32, 33, the court said:
"While article 109 of the Constitution of 1898 vests in district courts original jurisdiction in all cases where `civil or political rights' are involved, we are of opinion that this grant does not include the question of a party nomination, which must be determined by the party itself or by certain public officials as provided by statute."
12 C.J. 878, § 381:
"Political Questions. In General. It is a well settled doctrine that political questions are not within the province of the judiciary, except to the extent that power to deal with such questions has been conferred on the courts by express constitutional or statutory provisions. It is not so easy, however, to define the phrase `political question,' nor to determine what matters fall within its scope. It is frequently used to designate all questions that lie outside the scope of the judicial power. More properly, however, it means those questions which, under the constitution, are to be decided by the people in their sovereign capacity, or in regard to which full discretionary authority has been delegated to the legislative or executive branch of the government."
Id., p. 881, § 384:
"Elections. Elections are not per se the subject of judicial cognizance, but are matters for political regulation. Subject to express constitutional restrictions, all matters relating to the holding of elections, and determining their results, including contests, *Page 502 
are for the legislature, free from judicial control."
The general rules as expounded by the courts of equity are to be found in 9 R.C.L., p. 987:
"Jurisdiction of Courts in Election Matters Generally. —
"In considering the general powers of the courts, a distinction has been drawn between the jurisdiction of courts of equity and of law, based upon a distinction between political and civil rights. Political rights have been defined to be rights exercisable in the administration of government and comprehend the power to participate directly or indirectly in the establishment or management of the government. They are opposed to civil rights which broadly comprehend all rights accorded to every member of a district or nation. In view of this distinction, the right of suffrage being political in character, it has been generally held that its assertion and protection are not properly matters for the cognizance of courts of equity, for the subject of the jurisdiction of such courts is civil property, and they are not concerned with the maintenance of purely political rights where no civil property right is involved. The extraordinary jurisdiction of courts of chancery cannot, therefore, be invoked to protect the right of a citizen to vote or to be voted for at an election, or his right to be a candidate for, or to be elected to, any office. Nor can it be invoked for the purpose of restraining the holding of an election, or of directing or controlling the mode in which, or of determining the rules of law in pursuance of which an election shall be held. *Page 503 
"If a public officer, charged with political administration, had disobeyed or threatens to disobey the mandate of the law, whether in respect to calling or conducting an election or otherwise, the party injured or threatened with injury in his political rights, must seek his remedy in a court of law, and not in a court of chancery."
In the case of Le Blanc v. Michel, 122 La. 339, 47 So. 632, 636, plaintiff and Calvin K. Schwing were candidates for the Democratic nomination for judge of the Twenty-Fourth judicial district court. Both parties claimed to have been elected. The Democratic District Executive Committee met and canvassed the returns of the election and declared Mr. Schwing the nominee and certified his name as such to the Secretary of State. Plaintiff brought mandamus proceedings against the District Executive Committee, alleging that he had obtained a majority of the votes cast but that the committee in violation of the law had declared his opponent the nominee and certified his name to the Secretary of State. The district judge, after hearing the matter, made the writ peremptory and the District Committee, as the defendant, appealed suspensively. Plaintiff then instituted injunction proceedings before the district court at Baton Rouge against the Secretary of State, to restrain him from placing Mr. Schwing's name on the ballots, as the Democratic nominee in the general election. An exception to the jurisdiction of the court ratione materiæ was filed on the ground that the Secretary of State was only a nominal party performing a ministerial or mandatory duty under the law, and as the committee had certified the nominee, he had no discretion *Page 504 
in the matter and had to do his sworn duty by placing the nominee's name on the ballots in the general election; that the matter was a political one of which the committee had jurisdiction, and its ruling could only be reviewed by the district court in which the mandamus proceedings had been filed. The trial court sustained the exception and dismissed plaintiff's suit and he applied to the Supreme Court for writs. In reviewing the matter, the Supreme Court said:
"* * * It is a matter not disputed in the one before us that the judicial Democratic committee for the Twenty-First judicial district was the special tribunal assigned by law to which should be referred, and by which should be determined, who was the person nominated by the Democratic party of that district as its candidate for the office of district judge at the primary election held on the 1st of September, nor that that committee did, as a matter of fact, act in the matter and announce its conclusion that Calvin K. Schwing was the person who had received that nomination, and that the same had been placed in the hands of the Secretary of State. Being so placed, the law itself directed what the Secretary of State should do as the result of that fact. It is conceded by all parties that the district court for the parish of West Baton Rouge, in which the judicial district committee held its session, was the proper court to which should be submitted all contests raised by candidates as to the action of that committee. * * *
"When the judge of the Twenty-Second judicial district examined the legal situation, he evidently reached the conclusion that his action in granting the injunction was ill *Page 505 
advised and unauthorized. He, therefore, discharged the injunction and set aside the order of injunction he had given. He was evidently of the opinion that he was illegally and without authority interfering with and changing the legal status of affairs resulting from the action of the committee and the announcement made to the Secretary of State that Schwing was the nominee for judge, and resulting from the status of affairs in the matter of the litigation in East Baton Rouge; that he was powerless to pass upon the merits of the case, and that the party most vitally interested in the matter had not been made a party to the injunction proceedings. We think that was the legal view to be taken of the situation, and that the district judge properly recalled his order for an injunction. We do not think the district judge was absolutely forced to grant a suspensive appeal to the plaintiff. * * *
"We know nothing of the merits of the case, as we have said, and we must assume, until the fact is judicially disproved, that the action of the district committee, declaring Mr. Schwing to be the nominee of the Democratic party for the judgeship of the Twenty-First judicial district was legal and correct. If it be true, as asserted, that the application of legal principles to the case before us will bring about the result claimed and establish the fact that the primary election system adopted by the General Assembly, instead of leading up, in point of fact, to the selection of candidates by the people, may have directly an opposite effect, the court is bound nevertheless to let these results be reached. Its duty is perfectly clear. Even if the application of correct principles of law to this particular *Page 506 
case should lead up to hardship and a reversal, in point of fact, of the will of the people, this case must be governed and controlled by these principles."
If we were to place upon the provisions of section 30 of the act the construction that the relator contends for, the court would have no jurisdiction, as the matter would then be a political one, vested solely in the jurisdiction of the Third Supreme Court Democratic Executive Committee.
On the other hand, if the provisions of that section are interpreted as the plaintiff contends they should be, it is obvious that the courts would have jurisdiction to compel the committee to perform a ministerial duty and declare plaintiff the nominee by a writ of mandamus.
In Le Blanc v. Hoffmann, 175 La. 517, 143 So. 393, 395, we said:
"The courts of this state have jurisdiction in matters involving the proper administration of the Primary Law by the officials charged with its execution, and a mandamus will lie to compel the performance of a ministerial duty imposed by the Primary Law, and an injunction will issue to restrain an attempted act in violation of its provisions."
The Thirteenth judicial district court for the parish of Evangeline, where the Third Supreme Court District Executive Committee may be sued, has the right to review the committee's construction of the statute; but under the holding of Le Blanc v. Michel, supra, it is clear and plain that the Nineteenth judicial district court, where this suit was instituted, has no right to do so, particularly *Page 507 
where the suit is against the Secretary of State alone.
In considering the exception of nonjoinder of parties defendant, it might be well to state that the evidence offered in the trial of the rule shows, and relator in his application for writs alleges, that another candidate, John B. Fournet, has qualified to run in the October 9th primary. The Secretary of State is only a nominal defendant, his duties in connection with this controversy being purely ministerial. The real parties at interest are the new candidate who has qualified and seeks the nomination, the Third Supreme Court District Democratic Executive Committee, whose right to refuse to declare the plaintiff the nominee and authority to order the October 9th primary election are challenged, and the electorate of the district, whose right to express their choice by their vote, as to whom they shall select as a Justice of the Supreme Court. The rights of these will be denied if the plaintiff prevails.
In Le Blanc v. Michel, 122 La. 339, 350, 47 So. 632, plaintiff claimed that the District Executive Committee had illegally certified his opponent as the nominee and asked that the court issue an injunction to restrain the Secretary of State from placing the certified nominee's name on the ballots. The trial judge at first granted the injunction but later recalled it. In reviewing the case, the Supreme Court said (page 350 of 122 La., 47 So. 632, 636):
"* * * that he was powerless to pass upon the merits of the case, and that the party most vitally interested in the matter had not been made a party to the injunction proceedings. We think that was the legal view *Page 508 
to be taken of the situation, and that the district judge properly recalled his order for an injunction. * * *"
32 C.J. 296:
"Under the general rule all persons whose interests will necessarily be affected by the decree, or without whose presence a complete settlement of the questions involved in the action could not be attained, are of course properly joined as defendants. So also persons without whose joinder no effectual decree can be rendered in plaintiff's favor are indispensable parties, since the court ought not to interfere at all except in a mode which would be effectual for the purpose of the decree."
Miller v. Klasner, 19 N.M. 21, 140 P. 1107:
If the interests of those present and those absent are so interwoven with each other, that no decree can possibly be made affecting the one without equally operating upon the other, then the absent persons are indispensable parties, without whom the Court cannot proceed, and, as a consequence will refuse to entertain the suit.
In the case of State ex rel. Navo v. Baynard, State Auditor, et al., reported in 176 La. 520, 146 So. 41, 43, in which a suit was filed against the State Auditor and the Bureau of Criminal Identification and Investigation, the former being a resident of East Baton Rouge, and the latter being domiciled in Caddo parish, on an exception of misjoinder of parties, the court properlyoverruled the exception, holding:
"If this suit had been brought in the parish of Caddo, the auditor of the state might have declined jurisdiction there on the same *Page 509 
grounds urged by the superintendent of the bureau in the present proceeding. Manifestly, the cause of action in this case cannot be split and two suits filed in different parishes. We see no reason why the court below should not entertain jurisdiction. In fact, it is the only one that may. Coreil et al. v. Evangeline Parish School Board et al., 160 La. 1011, 107 So. 783; St. Landry Lumber Co., Ltd., v. Mayor Board of Aldermen of Town of Bunkie,155 La. 892, 99 So. 687."
Plaintiff in his petition alleged that it was the mandatory duty of the Third District Supreme Court Executive Committee to declare him the nominee. How the committee can be ignored after it refused to accede to plaintiff's request is hard to understand.
It therefore appears that the relator has made a prima facie showing that the committee and the other qualified candidate are necessary parties in a proceeding where their rights are directly affected.
The exception of no right or cause of action involves an interpretation of section 30 of Act No. 97 of 1922, amended by Act No. 215 of 1924, § 2, which reads as follows:
"Section 30. That in the event that after the date has passed on which candidates are allowed to enter and file their notification in any primary under this act, * * * it shall be found that there be but one candidate for any particular office for which the primary has been called, the respective committee ordering said primary, shall then be immediately convened, and the person so entering and being thus unopposed shall be declaredto be the nominee of the party that has ordered said primary for the particular office, for *Page 510 
which he has offered, without the necessity of holding a primary election for said office.
"In like manner, when a candidate for membership on a party committee, provided for in this act, shall be unopposed, he shallbe declared elected without the necessity of having his name printed on the ballot and being voted for.
"That in the event that after the date has passed on which candidates are allowed to enter and file their notification in any primary, under this act, one or more of the rival candidates for any particular office shall die, new candidates for that office shall be permitted to enter and file their notification for a period of five days after such death; provided, that this provision shall not be effective when the death occurs within seven days of the date fixed for the primary election."
From a careful reading of this section, we initially conclude that section 30, on which plaintiff relies, is by no means free from uncertainty and does not accord to the plaintiff the clear right to be adjudged the nominee. On the contrary, we find ambiguity in the text of paragraph 3; this ambiguity, according to well-founded rules of statutory construction, must be resolved first by an examination of the other provisions of the statute and especially by the provisions of the same section thereof. Paragraphs 1 and 2 of section 30 of Act No. 97 of 1922 provide specifically that an unopposed candidate shall be declared to be the nominee. Paragraph 3 of the same section of the statute provides that in the event of death of a rival candidate within seven days of the primary election, no other candidate may enter and file his notification, *Page 511 
but it does not provide specifically that the surviving candidate shall be declared the nominee. The definite statutory declaration in the first and second paragraphs of section 30 to the effect that the unopposed candidate shall be declared to be the nominee precludes us from supplying paragraph 3 with this omission. "Inclusio unius est exclusio alterius." If in the same section of this act in two preceding paragraphs the lawmakers inserted two clauses to the effect that the committee should meet and declare certain candidates to be the nominees, why should they not have provided for the same to be done in paragraph 3, if they intended to accomplish such a result.
The inclusion of the specific provision in question in the first and second paragraphs and its omission in the third are supported by reason.
Paragraphs 1 and 2 relate to an unopposed candidate, as they specifically state, and paragraph 3, to a surviving candidate. When a candidate is unopposed, he represents the choice of the electorate, because no member or group of members of the electorate has cared to oppose him. But a surviving candidate whose lone candidacy results from a fortuitous circumstance, or an act of Providence, such as death, cannot be said to be an unopposed candidate from electoral choice. Indeed, he may be so unrepresentative of the electoral choice that, in the election, he would receive but a negligible number of votes. To interpret the statute so as to declare such survivor the nominee could thus lead to absurdity. In fact, a murderer might by an act destroying his opponent thus be made a party nominee for the highest office in the state. *Page 512 
The difference between a candidate unopposed by choice of the electorate and a candidate unopposed by reason of death of a rival candidate is real and the lawmakers observe it. This difference is founded on sound public policy.
In the case of Langridge v. Dauenhauer, 120 La. 450, 452, 45 So. 387, 388, the court said:
"There is nothing in the provision quoted, or in any other of the statute, to indicate that it was the purpose of the law makers to obstruct with mere technical difficulties, the exercise of the right, which every citizen has, to seek the approval of his political associates, or of the public at large. To the contrary, the whole spirit of the legislation is to encourage the multiplication of worthy candidates for nominations to public office, in order that the body of voters constituting a political party, or constituting the electorate at large, may have the benefit of a choice, and not be compelled to accept candidates chosen by the minority or thrust upon them in some other way."
In the case of State ex rel. Trosclair v. Parish Democratic Committee, 120 La. 620, 45 So. 526, 527, this court said:
"The object of Act No. 49, p. 66, of 1906, in providing for compulsory primaries, was to secure to the people, free from political dictation, the right and privilege of choosing their public servants. Read in the light of this purpose, the act reveals the intent to forbid the interference of political committees in the conduct of primaries, except in the casesspecially authorized by the provisions of the statute." *Page 513 
In the case of Parker v. Democratic Executive Committee, 5 La. App. 712, 715, both candidates claimed to have been elected, but the returns were so confusing that the Parish Executive Committee was unable to definitely satisfy itself as to which one of them had won and ordered another election. The court upheld the authority of the committee to do this and said:
"The underlying principle of all elections is to ascertain the will of the majority. * * * We think, under the circumstances of this case, the committee was well within its rights in doing so."
In the case of State ex rel. Dunshie v. Fields et al.,164 La. 954, 115 So. 45, 47, relator filed his notice of intention to become a candidate one day beyond the time allowed by law but within the time allowed by the Executive Committee's resolution. The court, in affirming the committee's ruling disqualifying him, said:
"It [the Legislature] has also shown this intention by requiring in section 30 of the act that the committee meet, should it be found that there is but one candidate for the nomination, `after the date has passed (meaning the date fixed in the act) on which candidates are allowed (italics ours) to enter and file their notification,' and declare such candidate the nominee. It has also shown this intention, in the same section, by providing under what circumstances an additional period will be allowed for the filing of notifications. These provisions indicate that the Legislature considered that the time fixed by it is sacramental, and that no notification should be filed and recognized after that time. *Page 514 
In fact, it is usually held that a time limit for filing notifications under an election law is mandatory. * * *
"Nowhere in the statute, or elsewhere in the law, is the committee given discretion to fix the period for filing notifications — to shorten or lengthen it — nor is the committee even required, in issuing its call, to give notice when the period for filing notifications begins or when it terminates. The statute itself has done that."
In the dissenting opinion, on page 967 of 164 La., 115 So. 45, 50, we find the following pertinent language:
"There was something more important in this case than the contest between James J. Bailey and James E. Dunshie for the office of secretary of state. The important matter involved inthe contest was the right of the people of Louisiana to electtheir secretary of state, and the ruling of the committee, repudiating its resolution, deprived the electors of that privilege."
The following appropriate language is taken from the dissenting opinion in the case of Smith v. Parish Democratic Executive Committee, 164 La. 981, at page 985, 115 So. 54, 56:
"The majority opinion in this case puts too narrow and technical a construction upon the law to have my approval. It overlooks the broad and important purpose of the law, to allow any and every qualified elector the privilege of being a candidate for public office; and it overlooks the more important idea that the electors at large should not be deprived of their privilege of choosing their *Page 515 
public officials except in those cases where the law, in terms,forbids it." (Italics ours.)
In interpreting the last provision of paragraph 3 of section 30, one may reasonably conclude that the lawmakers considered the seven days preceding an election an inadequate period of time for other candidates to qualify and conduct a reasonable campaign, particularly where there is a large territory to cover, as in this case, and that the authorities in charge of the election would not have a proper opportunity for the preparation and distribution of election paraphernalia. This may be said to be the reason why the lawmakers use the language that this provision would not be effective if the death occurred within seven days of the election.
This view is further reinforced by the provisions in section 17 of the act which compels the Secretary of State to have the ballots reach the proper representative of each parish three days before the primary. The reason for this is to give the parish authorities ample time to distribute the ballots to each ward and precinct.
Thus in our opinion it appears that the interpretation placed by the Secretary of State, the Attorney General, and the District Executive Committee on the controversial language of section 30 of Act No. 97 of 1922 can be supported by logic, reason, and justice, as well as by considerations of sound public policy.
In the case of U.S. v. Alabama G.S.R. Co., 142 U.S. 615, 12 S. Ct. 306, 308, 35 L. Ed. 1134, the court said:
"It is a settled doctrine of this court that in case of ambiguity the judicial department *Page 516 
will lean in favor of a construction given to a statute by the department charged with the execution of such statute. * * *"
In State v. Board of Assessors, 52 La. Ann. 223, 26 So. 872, this court held:
A contemporaneous exposition of the law is generally the best construction of a statute. It gives the understanding of a community of the terms made use of by a Legislature. See, also, State of La. v. Comptoir National D'Escompte de Paris, 51 La. Ann. 1272, at page 1280 [26 So. 91].
Section 28 of Act No. 35 of 1916 introduced into our Primary Election Law the provisions now contained in section 30 of Act No. 97 of 1922. From 1916 to date we know of no case, nor has any been cited, in which a candidate claimed the nomination on the grounds that his opponent died within seven days of the primary election, although hundreds of elections have been held during that time.
It is also significant that the compiler of the statutes of the state, the Secretary of State, discharging the functions imposed by law, made the marginal note in 1922, viz., "Vacancy in nomination," opposite paragraph 3, a construction never questioned by any lawmaking agency in the numerous amendments considered and passed on the subject of primary election laws during the past decade.
As to the alleged usurpation of authority by the committee in calling the primary election of October 9, 1934, our attention has been directed to section 28 of Act No. 97 of 1922, which reads, in part, as follows:
"Section 28. That the State Central Committee and all other subordinate or local committees *Page 517 
of all the political parties coming within the provisions of this act, as now constituted are hereby recognized as the legal committees and the governing authorities of the said politicalparties.
"That the members thereof shall hold their offices as members of the said committees for the term for which they have been already elected. That they are authorized to make any rules andregulations for their government not in conflict with anyprovisions of this act. That the State Central Committees of all political parties, as now constituted, shall direct and order themanner in which all subordinate or local committees shall be organized and constituted, fix their number, regulate their term of office, the time of their election, provided same shall not be for a longer term than four years; provided, however, that themembers of all committees shall be elected in a direct primary. * * *" (Italics ours.)
The Executive Committees are placed in charge of primary elections by the provisions of Act No. 97 of 1922, being vested not only with ministerial duties, but, in some instances, with quasi judicial functions.
In the case of Parker v. Democratic Executive Committee of Franklin Parish, 5 La.App. 712, supra, the authority of the committee to call a second election was recognized.
If the position of the relator and the Third Supreme Court District Executive Committee that the plaintiff is not the nominee is sound, it appears to us that the committee had the authority to call another primary election. Furthermore, the attitude of the committee is in keeping with the provisions *Page 518 
of section 1 of the act where its purpose and spirit are stated:
"Section 1. Be it enacted by the Legislature of Louisiana, that all political parties shall make all nominations for candidates for the United States Senate, Members of the House of Representatives in the Congress of the United States, all State,district, parochial and ward officers, members of the Senate and House of Representatives of the State of Louisiana, and all city and ward officers in all cities containing more than five thousand population, by direct primary elections.
"That any nomination, of any person for any of the aforesaid mentioned offices by any other method shall be illegal, and the Secretary of State is prohibited from placing on the official ballot the name of any person as a candidate for any political party not nominated in accordance with the provisions of thisAct."
The right of the people to choose their public officials is evidently regarded as sacred by the Legislature and the law has protected that right with many safeguards.
Courts should be reluctant to place a technical construction upon ambiguous provisions of the Primary Law that would tend to defeat the purpose and spirit of the statute, i.e., nomination by direct primary election. Obvious reasons of public policy dictate that only in instances wherein the law expressly, specifically, and clearly provides that the electorate shall not have the right to elect their officials, should the people ever be deprived of their right of suffrage. State ex rel. Trosclair v. Parish Democratic Committee, 120 La. 620, 45 So. 526. *Page 519 
The alternative ground on which the plaintiff claimed the nomination, i.e., by receiving more votes in the primary of September 11, 1934, than his deceased opponent, does not appear to us to be sound. An election contemplates an opportunity to the voters of having a choice between candidates. In the instant case there was no choice, there having been only one surviving or remaining candidate, the plaintiff. When Justice Overton died, he ceased to be a candidate. Thus it is difficult to understand how it can be seriously contended that the plaintiff was elected in accordance with the language of the statute.
"`Elections' — the expression of a choice by the voters of a body politic." State v. Canvassers, 78 S.C. 461, 469,59 S.E. 145, 147, 14 L.R.A. (N.S.) 850, 13 Ann. Cas. 1133.
"The word `primary' itself necessarily implies, as qualifying the word `election,' an election or choosing, antecedent to the final choice or `election.'" Kelso v. Cook, 184 Ind. 173, 110 N.E. 987, 992, Ann. Cas. 1918E, 68; 20 C.J. p. 57, par. 4; 19 C.J. p. 1257; 20 C.J. p. 55.
In reply to plaintiff's rule, defendant denied that plaintiff was about to sustain irreparable injury, that he was entitled to equitable relief, and that plaintiff did not have an adequate remedy at law.
It is axiomatic that the equitable writ of injunction, prohibitive and, especially, mandatory, being the harshest, most drastic, and extraordinary of remedies, may be invoked and granted only in instances wherein the party seeking the same is about to suffer an irreparable loss or injury without any adequate remedy at law. *Page 520 
It is equally well settled that mandamus is the appropriate remedy to compel performance by a public officer of a plain duty made ministerial by the provisions of a statute. C.P. art. 834; State v. Police Jury, 154 La. 389, 97 So. 584; Cook v. City of Shreveport, 163 La. 518, 112 So. 402; Le Blanc v. Hoffmann et al., 175 La. 517, 143 So. 393, and authorities therein cited.
Injunction and mandamus are not correlative remedies, and an injunction in mandatory form will not issue to compel the doing of an act when its performance may be accomplished by the legal remedy of mandamus. High on Injunctions (4th Ed.) vol. 1, § 28, p. 44; Lewis and Spelling, The Law of Injunctions (1926 Ed.) p. 46.
Plaintiff contends he has no complete and adequate remedy at law by mandamus since computation of the delays in obtaining a final judgment of this court on a mandamus writ will disclose that no final judgment could have been rendered until after the general election of November 6, 1934.
It is admitted that the committee met on September 15th, and on the same day, by a vote of eleven to three, refused to declare plaintiff to be the nominee, ordered the primary of October 9th, and fixed September 26, 1934, 12 p.m., or midnight, as the time limit in which candidates could qualify to enter the primary. The plaintiff did not institute the present suit until September 20th. The case was set for trial on the rule nisi on September 25th, on which day the relief sought by plaintiff was granted by the trial court. On the same day, defendant applied to this court for the usual remedial writs and *Page 521 
the case was considered by us on September 26th, at 2 p.m.
Time was of the essence of plaintiff's rights, as he well knew or should have known from the set date of the primary of October 9th and of the general election on November 6th.
Plaintiff had a clear, full, adequate, and appropriate remedy at law by mandamus against the District Committee, and had he promptly invoked it, we are of the opinion, contrary to that expressed by his learned counsel, that this court could render a final judgment on the merits prior to the general election of November 6th. True, mandamus is appealable suspensively as a matter of right. But clearly it would have been to the interest of the party cast below to appeal immediately. The record being short, the return date of the appeal could have been fixed and the transcript lodged here on the fifteenth day after the appeal was granted. We could then have heard the case at once, as a preference matter. The delay for rehearing would have expired on or before October 31st. A judgment in his favor would have dated from the death of Justice Overton, or, at least, from the date of the primary on September 11th, and any action taken or election conducted by the committee thereafter could have been declared null and void.
Furthermore, plaintiff has another clear, full, and adequate legal right by virtue of section 27 of Act No. 97 of 1922 to contest, by summary procedure, the results of the primary of October 9, 1934:
"That in elections held under the provisions of this actall contests shall be made *Page 522 before the courts of the State, as herein prescribed, which arehereby fully vested with the necessary power, authority andjurisdiction to hear, try and determine the same. Any candidatefor a nomination for any office who shall claim to have beennominated, and shall desire to contest the election, shall present a petition to the Judge of the District Court of the parish in which the capitol of the State is situated, if the office be that of Governor, Lieutenant Governor, Attorney General, Secretary of State, State Treasurer, Auditor of Public Accounts, Superintendent of Public Education, or other State officer or United States Senator; or if it be a municipal, parochial or district office, then to the District Court of the parish in which the contestee resides, which petition shall setforth specifically and in detail the grounds on which the contestis based and the irregularities or frauds of which complaint ismade; that thereupon the judge of said court or, in his absence,the clerk of said court, shall issue an order directing thecontestee to answer the petition within five days after serviceupon him of certified copy of the petition and order; that thecontestee shall be bound to answer not later than ten o'clocka.m. on the fifth day from and after said service, including Sunday and legal holidays; but if the fifth day shall be Sunday or other legal holiday, then on the next succeeding legal day, atwhich time, whether the contestee has answered or not, the courtshall proceed without further delay and in a summary manner totry the issue presented; and the trial shall be in open court orin chambers and no jury shall be allowed. Either party shall have the right to proceed to take evidence relative to *Page 523 
the facts specified, or to be specified in the petition at anytime before the trial, on giving the other party two days notice of the time and place where the evidence is to be taken; provided that the evidence may be taken before any officer authorized to administer oaths, who shall have the power and authority to issue process to compel the attendance of witnesses and the production of documentary evidence of every kind whatsoever. The court oforiginal jurisdiction shall render judgment within twenty-fourhours after the case is submitted. The party cast shall have the right to appeal as in other cases, on giving bond for a sum to be fixed by the court to cover cost of all courts, the emoluments of the offices involved for the full term being hereby made the test of the appellate jurisdiction; provided, said appeal shall befiled in the appellate court within not more than five days fromthe rendition of the judgment, and shall be tried on the originalrecords and by preference over all other cases whatsoever, and todecide the same within twenty-four hours after submission. Uponthe perfection of an appeal, the Clerks of Court shallimmediately notify the Appellate Court in writing, which said Appellate Court shall immediately set the appeal down for hearingwithout waiting the actual lodgment of the appeal. It shall bethe duty of the Appellate Court to hear and determine appeals atthe earliest practicable moment, and, if the Supreme Court be in vacation, it shall be the duty of the Chief Justice to convene the court at once in special session. That if a trial of the cases appealed to the Court of Appeal be desired at a time when the said courts are in vacation, it shall *Page 524 
be the duty of the judges composing such court, to meet in session without delay; that no application for rehearing shall beentertained, but the courts may correct manifest errors to which their attention may be called, upon their own motion."
Since the Third Supreme Court District Executive Committee in charge of the election set October 12, 1934, 12 noon (as provided by section 27), as the time to canvass the returns and declare the result of the primary to be held on October 9, 1934, mere arithmetical calculations of the delays provided for in section 27, above quoted, shows that the case could have been finally decided on or before October 31, 1934.
But plaintiff, eschewing both of these legal remedies, seeks relief by way of injunction. If his purpose was to obtain a final judgment prior to the primary of October 9th, to the end that, if the judgment were favorable to him, the said election could not take place, and, in the alternative, that, if the judgment were unfavorable, he could then make effective a possible earlier entry by participating in the election, even if the procedure by injunction were proper, which we deny, the failure of plaintiff to file his injunction suit immediately after the action of the committee on September 15th makes it impossible for us to render a judgment which could become final prior to October 9th. Defendant was guilty of no laches, since he applied for the writs immediately. The case was submitted to us on the evening of September 25th, and promptly considered on the 26th. Obviously the period of time between the earliest possible return date and October 9th would *Page 525 
be insufficient for the judgment to have become final, because the losing party would have 14 days to apply for a rehearing.
There is, in the equity courts of the common-law states, a well-recognized doctrine known as the balancing of inconveniences, in pursuance of which those courts, within their sound discretion, consider, in injunction matters, not only the applicant's bare legal rights, but also the damages which will result to the defendant from the enforcement of such rights, as well as the delay in bringing the suit. Lewis and Spelling, The Law of Injunctions (1926 Ed.) p. 110, and cases therein cited.
Learned counsel for plaintiff direct our attention to the fact that this court has not yet determined whether a mandatory injunction will issue for the sole reason that the delays attending mandamus proceedings would destroy the remedy. In the absence of local jurisprudence, we may appeal to equity, particularly in view of the fact that plaintiff is seeking equitable relief. In so doing we may be guided by the decisions of equity courts elsewhere in determining the natural law and reason which should be applied to the case. Le Blanc v. City of New Orleans, 138 La. 243, 70 So. 212.
And so we are of the opinion that the equitable doctrine of the balancing of inconveniences may be borrowed from the jurisprudence of our sister states and fittingly applied to the case at bar. Assuming, therefore, contrary to our opinion heretofore expressed, that plaintiff would have experienced some disadvantage in a mandamus proceeding of having the defendant entitled to a suspensive appeal, does it follow that he may resort to *Page 526 
injunction, in which proceeding the defendant would not be entitled, as a matter of right, to a suspensive appeal (Act No. 29 of 1924) and thus shift onto the defendant and other interested parties the very disadvantage which the plaintiff sought to escape by forsaking mandamus for injunction? He who seeks equity must do equity, and we know of no authority which would permit an applicant in injunction to obtain this advantage.
No principle of equity is more definitely fixed than that political rights, including questions concerning the election of public officers, cannot be tried or determined by injunction proceedings.
"A court of equity will not permit itself to be made the forum for determining disputed questions of title to public office, or for the trial of contested elections, but will, in all such cases, leave the claimant of the office to pursue the statutory remedy or the common law remedy." High on Injunctions (4th Ed.) vol. 2, par. 1312. The same doctrine prevails in our own jurisprudence. It was first announced in Guillotte v. Poincy, 41 La. Ann. 333, 6 So. 507, 5 L.R.A. 403, and has been reaffirmed so often that it has now the force of stare decisis. State v. Turner, 152 La. 828, 94 So. 411.
Plaintiff in his petition alleges that nomination is equivalent to election. Still his counsel argue that the suit is not an election contest. We cannot agree with counsel. To sustain the writs issued below, or to dissolve them, must necessarily involve a determination by this court of the political right of the plaintiff to the Democratic nomination. *Page 527 
Hence, in our opinion, the procedure is repugnant to the law already stated.
We are further moved to grant the writs applied for by another consideration. In Felix v. Michel, 122 La. 339, 352, 47 So. 638, the doctrine of which appears to us entirely sound, it was held that courts are without power to prevent the Secretary of State from placing upon the official ballot the names of all candidates that have been certified to him by the Executive Committee under the primary law.
Counsel for plaintiff contends that the committee is nowhere required to make a certificate to the Secretary of State under the circumstances of the case at bar; that "all the Committee does is to call off the primary; that the law makes the plaintiff the nominee, not the action of the Committee; and that the Secretary of State must put plaintiff's name on the ballots because the law says he is the nominee." We disagree with learned counsel, basing our opinion on section 28 of Act No. 97 of 1922, which we quote again:
"That the State Central Committee and all other subordinate or local committees of all the political parties coming within the provisions of this act, as now constituted are hereby recognized as the legal committees and the governing authorities of the said political parties."
Section 27 of the statute, in part, reads:
"That in all elections, where returns are, by this act, provided to be made to the respective committees ordering saidprimary, it shall be the duty of the said chairman, immediatelyupon receiving the said returns, to at once open the same andcause same to be *Page 528 tabulated and compiled, and at 12 o'clock noon on the fourth dayafter the primary, the said committee ordering same shallreconvene at the same place and the chairman thereof shall submitto it the tabulated statement showing the result of said primarytogether with the original returns received by him. * * *"
If plaintiff's position is legally sound, it will be noted that the very section under which he claims the nomination provides that the committee shall meet and declare the nominee. He alleges in his petition that it was the mandatory duty of the committee to declare him the nominee.
In view of these provisions, we are of the opinion that Act No. 97 of 1922 imposes upon the Secretary of State only ministerial duties and no discretionary or quasi judicial functions, and that, therefore, he has no authority under the act to recognize a nominee and place his name on the ballot until the proper Democratic Executive District Committee has declared the candidate to be the nominee. Le Blanc v. Michel, 122 La. 339-348, 47 So. 632. Any other construction, conferring on the Secretary of State such discretionary and quasi judicial powers, would bring his office in conflict with the Executive Committee acting under its expressed statutory powers.
We hold, therefore, that although the statute does not require a certification in special form, nevertheless a declaration by the committee recognizing the candidate to be the nominee must precede his recognition by the Secretary of State and the inclusion of his name on the official ballot. Injunction should not issue to achieve a different result. *Page 529 
Wherefore, we are of the opinion that relator has established his right to have this court invoke its supervisory jurisdiction and grant the remedial writs.
The remedial writs herein granted are accompanied by a stay order thus permitting the primary of October 9th to be held to the end that the judgment of this court, which perforce could not become final prior to October 9th, if unfavorable to plaintiff, would not leave the electorate of the district without an elected nominee, and make it possible for the District Committee to name the nominee under section 31 of Act No. 97 of 1922.
We are deferring the return dates on the writs to November 26, 1934, that is to say, subsequent to the primary of October 9, 1934, and subsequent to the general election of November 6, 1934. In so doing, we are provoked by considerations of broad public policy with due regard for plaintiff's rights.
Patently, for the reasons already stated, irrespective of the return date, no judgment of this court favorable to plaintiff can become final in time to stop the primary election of October 9, 1934. The District Committee having fixed September 26th as the date on which candidates for election in the primary of October 9th should enter and file their notifications, it is obvious that even a decision of the court could not be rendered in time to affect plaintiff in the matter of qualifying on the day fixed by the committee. Thus the only advantage plaintiff could derive from the extraordinary procedure he has selected would be a decision from this court prior to October 9th which, since it cannot become final until after that date, would serve merely to assist plaintiff in determining whether *Page 530 
or not, if he qualifies on September 26th, he should continue to be a candidate and participate in the primary election of October 9th. It is not the function of the judiciary to resolve the doubts of candidates for office by extricating them from political dilemmas. Accordingly the fixation of the return date prior to October 9th could in no way benefit plaintiff.
On the other hand, the fixation of a return date at any time prior to the general election of November 6th might very seriously affect the voting in the primary of October 9th and thus embarrass both the electorate and the candidates. The judiciary should be reluctant to interfere with the free choice of the electorate and to prejudice the political rights of those who aspire to office. This reluctance must be converted into a refusal in the instant case when the chosen procedure is erroneous, wherein the plaintiff is not left without remedy and in which the majority of the court, having had the benefit of the entire record in its consideration of the application for the writs, conclude that the writs should be granted.
Our judicial determination not to embarrass the electorate and the candidates in the primary election of October 9, 1934, is not without precedent. In remedial writ No. 33133 on the docket of this court, entitled Williams v. Board of Supervisors,[1] the majority of this court went to the extreme limit of assuming the unconstitutionality of Act No. 22 of 1934, which accords to the board of supervisors the right to designate certain election commissioners, and of declaring the *Page 531 
continued validity of a repealed provision of the former law, rather than to issue remedial writs on which an effective decree could not be rendered prior to the primary election. Similarly in remedial writ No. 32070, entitled Broussard v. Democratic Ex. Committee, 176 La. 620, 146 So. 313, Mr. Justice St. Paul, in issuing remedial writs, unreported, postponed the return date until after the general election on the grounds, among others, that no effective decree could be rendered prior to the primary election.
It is noteworthy that in both of the cases cited, the parties against whom the action of the court was directed had no other adequate remedy to protect their rights.
In the instant case plaintiff is not without adequate remedy. He may still mandamus the Democratic Committee. He may also participate in the primary of October 9th, or he may contest the same.
Thus, balancing the equities of the parties on the pivot of the return date, we observe a decided balance in relator's favor.
The conclusion which we have reached affords the plaintiff an opportunity to receive a final judgment of this court on the merits of his claims in a proper proceeding, the electorate an opportunity to select a nominee in the event the plaintiff's claims are finally decided adverse to him, and avoids lending judicial sanction to the use by litigants, in political matters, of drastic equitable remedies where adequate remedies exist at law. We have thus accomplished our purpose of doing substantial justice to all parties concerned. Such is the purpose of equity. *Page 532 
 On Petition to Dismiss the Suit on the Ground that It has been Abandoned, and on the Merits.
[1] Not for publication.