(115 So. 54)

No. 28984.

SMITH v. PARISH DEMOCRATIC EXECUTIVE COMMITTEE FOR PARISH OF JEFFERSON.

Nov. 30, 1927.

*(Syllabus by Editorial Staff.)*

1. Elections ⚷121(1)—Rights and duties of political parties are governed by statute (Primary Election Law; Registration Law).

The rights and duties of all the political parties are such as are stated in the Primary Election Law (Act No. 97 of 1922) and Registration Law (Act No. 122, Ex. Sess. 1921), to which it refers, since these laws are intended to completely regulate subject-matter.

2. Elections ⚷126(4)—Objection to candidacy for parish office at primary election held properly sustained, where prospective candidate did not register as voter or declare party affiliation before expiration of time for filing applications (Primary Election Law, §§ 10, 12, 13; Registration Law, § 21; Const. 1921, art. 8, § 1).

Candidate for parish office must have registered as voter and must have declared affiliation with party holding primary election before expiration of time for filing applications, under Primary Election Law (Act No. 97 of 1922) §§ 10, 12, 13, Registration Law (Act No. 122, Ex. Sess. 1921) § 21, and Const. 1921, art. 8, § 1, so that, where one who registered and declared affiliation after expiration of such term, but before committee had acted on protest against his candidacy, such objection was properly sustained.

O'Niell, C. J., and Overton and Land, JJ., dissenting.

Appeal from Twenty-Fourth Judicial District Court, Parish of Jefferson; L. Robert Rivarde, Judge.

The Parish Democratic Executive Committee for the Parish of Jefferson rejected the candidacy of Dr. J. Leonard Smith for a parish office, and he appealed to the district court. From a judgment affirming the decision of the Committee, he again appeals. Affirmed.

Andrew H. Thalheim, of New Orleans (A. Giffen Levy, of New Orleans, of counsel), for appellant.

A. T. Higgins and L. H. Perez, both of New Orleans (John E. Fleury and J. K. Gaudet, both of Gretna, of counsel), for appellee.

In the within styled and numbered cause, Mr. Justice THOMPSON being absent, due to illness, Hon. M. M. BOATNER, Judge of the Civil District Court for the Parish of Orleans, who was previously called in to take part in the hearing and disposition of the case, pronounced the judgment of the court in the case:

On October 12, 1927, the plaintiff filed with the defendant committee notice of his intention to become a candidate for a parish office at the coming primary election. On October 19 the time for filing notice of candidacies expired. On October 24 another candidate for the same office made objection to the plaintiff's candidacy on the ground that he was not a registered voter. It was true that the plaintiff was not then regis-

tered. During the forenoon of October 26 plaintiff was registered as a voter and at the same time he declared his affiliation with the party holding the election. During the afternoon of the same day the committee held a hearing, with the result that it maintained the objection and rejected the plaintiff's candidacy. The plaintiff appealed to the district court, which affirmed the decision of the committee, and he again appeals to this court.

[1, 2] The constitutional points made by the plaintiff in his petition and brief were abandoned at the oral argument. All the facts are admitted. Both parties agree that the sole question to be decided is this: Must a candidate at a primary election be registered as a voter, and must he have declared his affiliation with the party holding the election, at the time he gives notice of his candidacy to the committee, or at any rate, before the expiration of the term allowed by law for giving such notices? Or on the other hand, will it suffice if he registers and declares his party affiliation after that term has expired, but before the committee has acted on a pending protest against his candidacy?

The election is to be held, and these proceedings were carried on, and this cause is being considered, under the Primary Election Law, Act 97 of 1922. This statute is an elaborate measure, adopted in its present form after several revisions and after many years of experience. It was drafted with care and skill and is intended, with the Registration Law, to which it refers, to regulate completely the subject-matter. The rights and duties of all the parties are such as are stated in these laws.

By section 10 of the Primary Election Law (Acts of 1922, p. 181) "the qualifications of voters and candidates in primary elections, held under this act, shall be the same as now required by the Constitution and election laws of this state for voters at general elections. * * *"

Article 8, § 1, of the Constitution of 1921, after abolishing all rights to vote except in accordance with the Constitution, makes up a list of qualifications and includes the requirement that the citizen shall be "legally enrolled as a registered voter."

The Registration Law (Acts Ex. Sess. 1921, p. 309) in section 21 provides for the declaration and registration of party affiliation.

Section 12 of the Primary Election Law (Acts of 1922, p. 181) declares that, while no one shall be required to affiliate with a political party, "none but those who have so declared their political affiliation shall be permitted to become candidates or to vote in any primary election of any political party."

And section 13 of the same law requires one desiring to become a candidate for a parish office to file with the parish committee of the party holding the election, within 10 days after the issuance of the committee's call, his written notice of intention to be a candidate, "accompanied by a declaration that he is a duly qualified elector under the Constitution and laws of this state."

Clearly the purpose of all this is to exclude from participation in party primaries whether as voters or candidates, all who have not established their right to vote by registration according to law, and, beyond that, to withhold nomination for office from all who have not in writing publicly professed and recorded their adherence to the party holding the primary. To effect that purpose the law not only requires that the candidate must be in fact a registered voter, and that his party affiliation must appear by the registration roll, but it requires, besides, that in his application to the committee he must state that he is so qualified.

The date of the general election being fixed by law, orderliness requires that the

times of holding the primary and of the entrance and qualification of candidates should also be fixed. If, by the use of the present tense in the clause requiring that the candidate's application shall disclose on its face his right to be a candidate, the statute does not express its purpose to demand that the time for fulfillment of its conditions must be the time of application, that would be inferred; for what other time could be consistent with the scheme of the law? Surely the candidate's registration and declaration of affiliation could not be delayed until the close of registration just before the primary; that would invite party disloyalty, which it was a purpose of the law to prevent. And we may be equally sure that these things could not be delayed at all beyond the time fixed for the entrance of candidates, for that would, in effect, be to extend a term fixed by the law. See Dunshie v. Fields, ante, p. 954, 115 So. 45.

The intent of the law, as we understand the language which it uses, is to require that the qualification of a candidate shall be complete at the time he files his application, or, at any rate, before the expiration of the time for filing applications. Accordingly we must hold that the plaintiff not having timely registered and declared his party affiliation was not duly qualified to be a candidate, and that the decision of the committee and of the district court was right.

Reference was made at the argument and in the briefs to the cases of Dunshie v. Fields, ante, p. 954, 115 So. 45, and Boudreaux v. Committee, ante, p. 869, 114 So. 716. In neither do we find anything inconsistent with our views and conclusion in this case.

For these reasons we think the judgment appealed from should be affirmed.

OVERTON and LAND, JJ., dissent.

O'NIELL, C. J. (dissenting). The majority opinion in this case puts too narrow

and technical a construction upon the law to have my approval. It overlooks the broad and important purpose of the law, to allow any and every qualified elector the privilege of being a candidate for public office; and it overlooks the more important idea that the electors at large should not be deprived of their privilege of choosing their public officials except in those cases where the law, in terms, forbids it. That is why the Act 97 of 1922, which governs this case, makes the action of the committee final and incontestable so far as the committee allows aspirants to qualify as candidates for nomination, and permits the courts to interfere only in those cases where the committee denies an aspirant the right to qualify as a candidate for his political party's nomination. This court expressed the idea in Langridge v. Dauenhauer, 120 La. 450, 45 So. 387, in 1908, viz.:

"The spirit of the law providing for primary elections is to encourage the multiplication of worthy candidates for nomination to public office, in order that the body of voters constituting a political party, or constituting the electorate at large, may have the benefit of a choice, and not be compelled to accept candidates chosen by the minority, or thrust upon them in some other way."

The facts of this case are very simple. Dr. J. Leon Smith filed with the Democratic executive committee, within the time prescribed by law, his notification that he would be a candidate for the office of coroner, and at the same time made the necessary cash deposit. The doctor possessed all of the qualifications for being a candidate for the office, except that he had not yet registered, which, however, he had ample time to do. After the time for the filing of notifications of candidacy had expired, but within the time allowed for contesting the qualifications of those who had filed such notifications, Dr. Smith's opponent for the nomination protested against Dr. Smith's

candidacy on the ground that he had not registered or declared his party affiliation. It was not contended that Dr. Smith was a member of any other political party, or was not in fact a Democrat, or that he could not at any moment register and declare his party affiliation, or that he lacked any other qualification required of him as a candidate for the nomination. Before the committee met for the purpose of determining whether Dr. Smith had registered and declared his party affiliation, he registered, and, in registering, declared his affiliation with the Democratic party. He was therefore a qualified candidate in every respect when the committee met for the purpose of determining whether he was qualified. There is no dispute about that. The committee ruled him off of the ticket, not because he was not registered, or because he was lacking in any other qualification for the nomination, but as a penalty for his having failed to register before filing the notification of his candidacy, or before the time for filing such notification had expired. If the statute compelled or even allowed the committee to make such a harsh and unjust ruling, we would have to affirm it, notwithstanding the injustice to the electorate at large. But the statute does not allow it. Section 11 of the act declares that the committee, in deciding a protest against a candidate's qualifications, shall determine "whether or not the person applying to be a candidate is qualified"—not whether he *was* qualified at some previous time; and the same section declares that "in event that the committee shall determine that such person is so qualified," etc.—not that he *was* so qualified at some previous time; and the same section further declares that "in event the committee shall determine that such person is not so qualified," etc.—not that he *was* not so qualified at some previous time.

There is no provision in the statute sanctioning the committee's ruling in this case.

Dr. Smith could not have become a candidate for the nomination by filing his notification and making his deposit with the committee, nor by the expiration of the time for the filing of such notifications, for the committee was forbidden to certify his name to the secretary of state, to be printed on the official ballot, until the 5 days for the filing of protests had expired, and until the protest actually filed was acted upon by the committee. The time when Dr. Smith had to be qualified to become a candidate was when the committee had to decide whether he was then qualified to be a candidate for the nomination.

I do not doubt that the committee may adopt a rule requiring all candidates to produce their registration certificates and poll tax receipts within the time allowed for filing notifications, in order that the committee may be assured that each and every candidate will be duly qualified when the question of his qualifications will have to be determined. But the committee did not adopt any such rule. I agree to the proposition also that the committee would be justified, without having adopted any such rule, in refusing to allow any one to file a notification of his candidacy without having already registered and paid his poll taxes. But when the committee does in fact accept the notification of candidacy and the deposit, and when the candidate has in fact registered and paid his poll taxes when the committee is called upon to decide whether he has registered and paid his poll taxes, the committee cannot then say truthfully that he is not qualified in that respect, and the committee has no authority to penalize the candidate, by ruling him off of the ticket, for not having been qualified at some previous time.