This contest involves the right of Joseph Yuratich to participate as a candidate for the Democratic nomination for Police Juror of the Tenth Ward of the Parish of Plaquemines in the Democratic Primary Election to be held on January 20, 1948.
Yuratich, within the time fixed for the filing of applications to become a candidate for the party nomination for the said office, filed his declaration of candidacy with the Plaquemines Parish Democratic Executive Committee.
Section 28 of Act No. 46 of 1940, as amended by Act No. 351 of 1946, § 4, provides that anyone who has filed application to become a candidate, or any other qualified elector may object to the candidacy of any other person who has attempted to become a candidate, provided the contestant file objections in writing, setting forth in detail the reasons on which the objections are *Page 649 
based. Within the time provided by law, Vincent Jaspriza filed with the said Plaquemines Parish Democratic Executive Committee written objections to the candidacy of Yuratich, setting forth that the said Yuratich had not complied with the requirements in two particulars: First, in that he had not deposited the proper amount, and second (as set forth in the objection), "* * * he does not own in his own right, nor does his wife own in her own right, property of assessed value of at least $250.00, as required by law and resolution of the Democratic State Central Committee of Louisiana." Within the time required by law, the said contestee, Yuratich, filed answer with the said committee, reading as follows:
"My declaration of candidacy was filed in accordance with Act 46 of 1940, as amended, and more particularly, in accordance with Section 32 thereof, which gives directions as to the sums to be paid upon declaration of candidacy."
The said committee, after hearing, maintained the objections to the candidacy of Yuratich, holding that he was disqualified as a candidate for the democratic nomination of the office which he sought, Police Juror, Tenth Ward, Plaquemines Parish, for the reason that he had not deposited the proper amount when he filed his declaration of intention to become a candidate, and for the reason that at that time there was not on the assessment rolls of the Parish of Plaquemines property either in his name or in the name of his wife of the assessed value of $250.
Accordingly, on October 29, 1947, Yuratich filed his petition in the Twenty-fifth Judicial District Court for the Parish of Plaquemines setting forth the above facts and praying that the said Plaquemines Parish Democratic Executive Committee and the said contestant, Jaspriza, be cited to appear and answer and that, in due course, he have judgment overruling the objections to his candidacy and declaring him to be a duly qualified candidate for the position which he sought.
After a trial, there was judgment in the District Court in favor of Yuratich, ordering that the Plaquemines Parish Democratic Executive Committee certify to the Secretary of State the name of the said Yuratich as a candidate for the office of Police Juror. From this judgment, Jaspriza, the contestant, and the Plaquemines Parish Democratic Executive Committee have appealed devolutively and suspensively to this Court.
It is shown in the record, and it does not seem to be disputed, that neither the contestee, Yuratich, nor his wife has any property at all on the assessment rolls of the Parish of Plaquemines, and since there is then no controversy over the facts on which this objection is based, we shall consider it first before approaching the question of whether the candidate made the proper deposit when he filed his declaration of intention to become a candidate.
The question presented by this contention is simply this: May a political party require, as a condition precedent to becoming a candidate for party nomination for the position of Police Juror, that the person desiring to so become a candidate own in his own name, or that his wife own, property of the assessed value of $250, and if so, must the said person meet this requirement at the time of filing his declaration of intention?
The contestee maintains that the political party may make no such requirement; that it has not done so in this case; and as an alternative contention, the contestee maintains that if there is such a requirement, compliance may not be demanded until the time at which the person who desires to be a candidate, having been elected, attempts to take office.
The contestant and the parish committee, on the other hand, assert that the political party, through its proper committee, may, impose any reasonable conditions affecting anyone desiring to become a candidate for the party nomination; that the requirement that one who offers himself as a candidate for the position of Police Juror must own property of an assessed value of at least $250, or his wife must own such property, is a reasonable requirement; that such requirement may be legally imposed on all persons desiring to offer themselves as candidates for such office, and that anyone *Page 650 
so desiring to enter the primary must be so qualified at the time of filing his declaration of intention.
The authority granted to the Legislature to make laws governing such primary elections is found in Article 8, section 4, of the State Constitution, which reads as follows:
"The Legislature shall enact laws to secure fairness in party primary elections, conventions, or other methods of naming party candidates. No person shall vote at any primary election or in any convention or other political assembly held for the purpose of nominating any candidate for public office, unless he is at the time a registered voter, and have such other and additional qualifications as may be prescribed by the party of which candidates for public offices are to be nominated. * * *"
In section 27 of Act No. 46 of 1940, as amended by Act No. 351 of 1946, the Legislature set forth the qualifications which are required of voters and candidates in party primaries. This section reads as follows:
"The qualifications of voters and candidates in primary elections, held under this Act, shall be the same as now required by the Constitution and election laws of this State for voters at general elections and the further qualifications prescribed by the State Central Committee of the respective political parties coming under the provisions of this Act."
With particular reference to the special qualification which is required by law of Police Jurors, we quote the pertinent part of Act No. 94 of 1894 as follows:
"* * * The members of the police juries of the several parishes throughout the State, hereafter to be elected, shall possess the same qualifications as members of the House of Representatives and also the following additional qualifications:
"They shall be able to read and write and shall, each, own in his own right or whose wife shall own in her own right property of an assessed value of at least two hundred and fifty dollars in the parish for which they may be elected."
When the Democratic State Central Committee met in Baton Rouge on October 7, 1947, it provided by resolution, duly adopted, for the qualifications which would be required of all persons who might desire to offer themselves as candidates in the party primary to be held on January 20, 1948, and among those qualifications is found the following:
"Each candidate shall be eligible under the special qualifications (if any) prescribed by the Constitution and laws for the office for which he is a candidate."
The contestant and the parish committee point to that resolution and maintain that under it anyone desiring to become a candidate must, at the time he files his declaration of intention, be able to show that he possesses all the qualifications which, by law, he must have should he be elected and attempt to take office. The contestee, on the other hand, as we have said, is positive that the article of the Constitution and section 27 of the Primary Election Law, both of which we have quoted, have reference only to qualifications of voters and do not give to the party committee any right to impose special requirements on those intending to become candidates in party primaries. The contestee also contends that Act No. 94 of 1894, which provides that a Police Juror or his wife must own a certain amount of property in assessed value, need be complied with only when the person attempts to take office and may not be imposed by the committee as a requirement for running for the nomination.
[1] As we read the statute and the Constitution, we think that they give to the political party, which can act only through its committee, the right to establish such reasonable conditions as the said party, through its committee, may see fit to impose, and that persons who desire its nomination must comply with those requirements. The act (section 27) specifically gives to the committee the right to prescribe "further qualifications" than those required by "the Constitution and election laws."
[2] Counsel for the contestee say that this right to require "further qualifications" should be held to be limited to such requirements as may be necessary to maintain White Supremacy in Louisiana and should not be held to include the right to make a qualification which might exclude *Page 651 
such persons as may not be able to own property.
We see nothing in our history, nor in the wording of the Constitution, nor of the statute in question which requires that we hold that the right of the party to make other qualifications of those desiring to enter its primaries must be limited to such qualifications as relate to race, etc. We can only hold that where a statute gives a party committee the right to impose such other requirements as it may see fit to prescribe, the committee is given the right to impose any reasonable conditions.
[3] Of course, we read into the statute the word "reasonable", because it is obvious that no committee could arbitrarily impose a condition with which the ordinary citizen could not possibly comply. Thus, if a committee should require that a prospective candidate should own an unreasonably large amount of property, such a requirement would be beyond the power of the committee. But here there can be no contention that the requirement that the prospective candidate or his wife must own property of an assessed value of $250.00 is unreasonable, in view of the fact that that identical requirement is found in the statute which provides that, if elected, the person elected can not take office unless he has complied with that requirement.
[4] We think then that the Democratic State Central Committee was within its legal right in providing that one who might desire to enter its primary as a candidate for its nomination should "be eligible under the special qualifications (if any) prescribed by the Constitution and laws for the office for which he is a candidate."
We pass then to the contention of the contestee that he need not be called upon to show that he could comply with this property requirement at the time he filed his declaration of intention to enter the primary; that that requirement can not be imposed upon him until, if he should be elected, he presents himself to take over the office.
Counsel say that this is in truth a requirement of law and not of the committee; that this law, Act No. 94 of 1894, applies only to the eligibility of the person to take office at the time he attempts to do so, and does not in any way contemplate that he must be able to comply with the requirement of this statute when he attempts to enter the primary. And they say that this was held by our Brothers of the First Circuit in Migeot v. Barrilleaux, La. App., 166 So. 157. In that case the contestee had already been nominated in the party primary for the office of Justice of the Peace. At the time of his declaration of intention, he was not a freeholder. The Court found that the Constitution provides that no one may be a Justice of the Peace unless he be a free-holder, but it found that the primary law did not require that in order to become a candidate such person must be a freeholder, and the Court also found that it did appear from the record in that case that any such requirement had been prescribed by the Democratic State Central Committee when it set forth the provisions under which persons might enter that particular primary. The Court, therefore, held that since neither the law nor the Democratic party had made any such qualification a condition precedent to enter into the primary, the contestee could not be disqualified because he had not, at that time, complied with the constitutional requirement that he be a freeholder. The Court said that, in the absence of such requirement, the qualification made by the Constitution need be shown to have been complied with only at the time at which the duly elected person might present himself to take office.
That case, therefore, affords little help in the present controversy. Later decisions, however, of that same Court plainly express the view that where a political party imposes legal requirements as a condition precedent to entering into a primary, those requirements must be complied with at the time of filing the declaration to enter the primary, and that it will not do to say that the person who desires to enter may do so and it will be sufficient, if he is elected, to then take the necessary steps to make himself eligible.
In State ex rel. Tanner v. Duncan, La. App., 10 So.2d 507, 511, that Court (First Circuit) discussed the conclusion that it had reached in Migeot v. Barrilleaux, supra, and very plainly said that it had reached *Page 652 
that conclusion because the objections raised had not related to the qualifications to enter the primary — no such requirement that the applicant be a freeholder having been made by the party committee.
In this latter Duncan case, the Court said that the Democratic State Central Committee "indirectly prescribed the property assessment qualification as one of its own affecting the right of a candidate for nomination by that party for election to the office of Parish School Board member." And the Court, therefore, said that since the requirement had been imposed by the committee as a condition which must be complied with by anyone desiring to enter the primary, "consequently any objection raised on the ground that it is lacking, is one which would have to be presented before the committee before the primary election which has been called by it is held and under the procedure as outlined in section 28 of the primary law, Act No. 46 of 1940."
Still later, in Courtney v. Singleton, La. App., 27 Sold 448, 451, that Court further clarified its views saying:
"In Migeot v. Barrilleaux, La. App., 166 So. 157, the contest was over the nomination in a primary election of a candidate for the office of Justice of the Peace based on the ground that he did not possess the necessary qualification as a free holder and that he was unable to read and write the English language correctly, all as required by Art. VII, Sec. 47 of the Constitution of this State. In that case it did not appear that the Committee having charge and control over the primary election involved had ever prescribed property or literacy qualifications as some of its own regarding candidates for the office of Justice of the Peace and consequently we held that the lack of either was a matter which may have affected his eligibility to the office he sought but not his right to enter the primary, and therefore it could not be made the issue of a contest before the Committee under Section 28 of Act 46 of 1940. In the Tanner case, the Committee itself undertook to prescribe, even if indirectly, property assessment as one of its qualifications for candidacy for Member of the School Board and that is why it was held that an objection for lack of such qualification had to be made before and passed on by the Committee before an appeal could be made to the Courts.
"In the present case the lack of qualification complained of is one that is specifically prescribed by the Committee and so much more is that the reason why objection should have been timely presented to the Committee so that it could be heard and decided in that forum before being presented to the Court."
The Supreme Court, in Smith v. Parish Democratic Executive Committee, 164 La. 981, 115 So. 54, 55, set forth the question which was involved in that case in the following language:
"* * * Must a candidate at a primary election be registered as a voter, and must he have declared his affiliation with the party holding the election, at the time he gives notice of his candidacy to the committee, or at any rate, before the expiration of the term allowed by law for giving such notices? Or on the other hand, will it suffice if he registers and declares his party affiliation after that term has expired, but before the committee has acted on a pending protest against his candidacy?"
Here is the Supreme Court's answer to that question:
"The intent of the law, as we understand the language which it uses, is to require that the qualification of a candidate shall be complete at the time he files his application, or, at any rate, before the expiration of the time for filing applications. Accordingly we must hold that the plaintiff not having timely registered and declared his party affiliation was not duly qualified to be a candidate, and that the decision of the committee and of the district court was right."
We followed this ruling in Borne v. Parish Democratic Executive Committee, La. App., 192 So. 124.
[5, 6] Counsel for the contestee argue that there is no sound reason for a requirement that such qualification as a person must have in order to take office must be possessed when he decides to run for the office. We cannot agree. It must be remembered that a political party is a voluntary association of individuals, organized for the purpose of furthering particular *Page 653 
political or economic beliefs, and that, as such, it should have the right, within legal and otherwise reasonable limits, to make rules and regulations for the purpose of making certain that it selects as its nominees for the various offices the best available persons who are qualified for the position and who, if elected, will not be disqualified for failure to comply with legal requirements. It would be dangerous indeed to hold that such a party should not be permitted to insist that before anyone attempts to secure its nomination to run in a general election for any particular office, it could not make certain that this person is eligible and could successfully meet any attack on his eligibility should an attack be made by any rival party or parties.
An additional argument is made on behalf of the contestee to the effect that there is no sound reason to require that the property qualification be met at the time of attempted entry into the primary, and this argument is that the only reason why the property requirement is made is that the person who is elected to the office may be able to meet any financial responsibility which may be imposed upon him by non-feasance or malfeasance in office. In other words, say counsel, it is in the nature of a bond to guarantee the faithful performance of his duties. We do not think that this is in any sense the reason for the requirement. We think that the requirement was placed in our statutes in order to make certain that persons who run for a position, such as Police Juror, should be shown to be persons of some substance and responsibility.
[7] Our conclusion is that the Democratic State Central Committee had the legal right to require that as a condition precedent any person desiring to enter the primary as a candidate for nomination should have the legal qualifications which he would be required to have in order to take office. We conclude that the resolutions adopted by the committee can not be interpreted otherwise than as a requirement that one who offers himself as a candidate for the position of Police Juror must be able to show himself qualified in accordance with Act No. 94 of 1894. And we further conclude that since the requirement was legal and was made by the committee as a condition precedent to entering into the party primary, the committee correctly held that compliance therewith should have been shown as of the time of the declaration of intention to enter the primary.
It becomes unnecessary for us to consider the other ground on which the attack on the contestee is based.
It is ordered, adjudged and decreed that the judgment of the District Court be annulled and set aside, and that the ruling of the Plaquemines Parish Democratic Executive Committee holding that Joseph Yuratich did not qualify according to law be and it is reinstated, and therefore, it is further ordered, adjudged and decreed that Joseph Yuratich be and he is declared to be ineligible to become a candidate for the Democratic nomination for the office of member of the Police Jury for the Tenth Ward of the Parish of Plaquemines; appellee to pay all costs.
Reversed.