HARDY, Judge.
This suit was instituted by plaintiff, Martin S. Sanders, Jr., against the Twenty-Eighth Judicial District Democratic Executive Committee, praying for judgment recognizing him as a qualified candidate for nomination for the office of District Attorney in and for the Twenty-Eighth Judicial District of Louisiana, ordering the defendant to place his name on the ballot of the Democratic Primary, and for other appropriate relief. After trial there was judgment rejecting plaintiff’s demands, from which he has prosecuted this appeal. After argument and submission this court rendered judgment on June 22, 1954, affirming the judgment appealed from.
The material facts involved, as hereinafter recited, have been so well established as to leave no real basis for dispute. At a. meeting of the Democratic Executive Committee of the Twenty-Eighth Judicial District, comprising the parishes of LaSalle and Caldwell, on May 14, 1954, a primary election of the Democratic Party, for the purpose of nominating the said Party’s, candidates for the offices of district judge and district attorney, was called to be held on Tuesday, July 27, 1954. By action of the-committee at its said meeting candidates for nomination to the office of district attorney were required to file notifications of candidacy on or before the hour of 5:00-P.M. on May 24, 1954. It was provided, that the notification of candidacy be accompanied by an affidavit of the candidate- “ . . . setting forth that he possesses all of the qualifications prescribed by the-resolutions of the State Central Committee-of the Democratic Party.” On May 18, 1954, Sanders filed with the chairman of-' the District Committee written notice of his-, candidacy, declaring his possession of the qualifications fixed by the State Central Committee. This notice of candidacy was, *631 executed on a form prepared and. furnished by the Secretary of' State and approved by the Attorney General, which included an affidavit executed by plaintiff. One of the declarations in the affidavit which, is pertinent to this case reads a9 follows:
“That he possesses all of the qualifications of residence'and all other qualifications required by the Démocratic State Central Committee.”
At an early morning hour on May 22, 1954 plaintiff and his wife left their domicile in Olla, LaSalle Parish, Louisiana, and went to Memphis, Tennessee, where they remained until about 9:00 o’clock P.M. Sunday, May 23rd, at which time they left for Shreveport. Plaintiff’s wife, accompanied by plaintiff’s attorney, Mr. William Cady of Shreveport, returned to Olla on Sunday night, May 30th. Plaintiff testified that he remained in “Shreveport or thereabouts” during the period from early morning Monday, May 24th until Sunday night, May 30th, when he left for Olla, which he reached sometime about 8:00 o’clock Monday morning.
At 10:55 o’clock A.M. on Friday, May 28, 1954, one Fluitt E. Volentine, a duly qualified elector of Caldwell Parish, filed with the chairman of the Twenty-eighth Judicial District Democratic Executive Committee an objection to the candidacy of plaintiff, Martin S. Sanders, Jr., praying that, after hearing by the committee, the ■said Sanders be declared ineligible as a ■candidate for the Democratic nomination for the office of District Attorney for said ■district. The committee fixed a hearing on the 'objection for 4:00 o’clock P.M. June 1, 1954. On May 31, 1954, Sanders filed with the Committée exceptions to the jurisdiction ratione materiae, together with an answer to the Volentine petition of objection. At the hearing by the Committee on June 1, 1954, the exceptions filed by Sanders were overruled. After hearing the •evidence and argument and consideration -thereof, the Committee adopted a resolution ■declaring Martin S. Sanders, Jr., to be in-teligible as a candidate for the office of District Attorney. On June 3, 1954, plaintiff filed this suit.
Accompanying the Volentine objection, as filed before the District Committee, was a certificate duly executed by Volentine, the major portion of which, in view of the issues raised by plaintiff, we think it necessary to set forth, as follows:
“I, Fluitt E. Volentine, make this certificate in accordance with the provisions of [LSA-] R.S. 18:307 and in connection with my objections to the candidacy of Martin S. Sanders, Jr. in the democratic primary election to be held in LaSalle and Caldwell Parishes on July 27, 1954, in which primary election the said Sanders seeks to obtain the democratic nomination for the office of district attorney in and for the Twenty-Eighth Judicial District of Louisiana.
“I further certify that I made diligent and repeated efforts to effect personal service or domiciliary service on the said Sanders of the annexed objections to his candidacy in the aforesaid election. I contacted the said Sanders’ • friends, relatives and acquaintances directly and indirectly and was informed that he had left the State of Louisiana on or about Friday, the 21st day of May, 1954; from information furnished me, I believe that he is or has been in Memphis, Tennessee, but'that his exact address there is unknown to me. Despite the fact that efforts were made to locate him through the place of employment of his wife, Ufanía Clinic in Urania, Louisiana, and through his sister-in-law, Mrs. Bill Fullerton of Georgetown, Louisiana, and through his brother-in-law, E. W. Price, Jr. of Memphis, Tennessee and- other- acquaintances of the said Sanders, no one could give me definite information as to his present whereabouts. Accordingly, on May 27, 1954, I deposited in the United States Mails at Olla, Louisiana, exact copy of my objections to his candidacy *632 and addressed the said Sanders at the same address which he gave in qualifying as a candidate in' said primary election before the Twenty-Eighth Judicial District Democratic Executive Committee which address was shown by said qualification papers is Post Office Box 602,, Olla, Louisiana. In addition thereto, I left a copy of the objection to his candidacy at his office in Olla, Louisiana and I also left a copy at his home in Olla, Louisiana.
“All of the foregoing was accomplished prior to the filing of the objections to the said Sanders’ candidacy before this Committee.”
The resolution of the State Central Committee of the Democratic Party, to which reference was made in the resolution of the District Committee calling the primary election, was adopted October 2, 1951, and contained, inter alia, the following requirement bearing upon the qualifications for candidacy for office in primary elections of the Democratic Party:
“That in accordance with Section 4 of Article 8 of the' Constitution and [LSA-JR.S. 18:306, the qualification of every voter and candidate in primary elections held by the Democratic Party in this State shall be the same as required by the Constitution and election laws of this State for voters at general elections, and in addition each such voter and candidate shall possess the following qualification:
******
“Each candidate shall be eligible under the special qualifications (if any) prescribed by the Constitution and laws for the office for which he is a candidate.
******
“No person shall become a candidate in any such primary unless he shall have first * * * filed with the chairman of the proper committee (or with the secretary of the committee or by mail), as required by [LSA-JR.S. 18:-309, 312, written notification of his intention to become a candidate at the primary, accompanied by declaration under oath * * * that he possesses all of the qualifications of residence and all other qualifications required by the Democratic State Central Committee * * *.” (Emphasis by the court.)
-The. qualifications for holding the office of District Attorney are set forth in Article 7, Section 59 of the Constitution of 1921, as follows:
“He shall be an actual resident of the district and a qualified elector of the same, and shall have practiced law in the State for at least three years.”
The plaintiff, Martin S. Sanders, Jr., was admitted to the practice of law on the first. day of August, A.D. 1951, since which time, he has been actively engaged in the practice of law, having his office in Olla in LaSalle Parish, Louisiana, in the Twenty-Eighth Judicial District.
Before this court plaintiff-appellant relies upon two issues, first, the failure of Volen-tine, objector to plaintiff’s candidacy, to. strictly comply with the provisions of LSA-R.S. 18:307, subsection B, regarding service-of the objections upon the candidate, and,, second, the alleged error of the District Democratic Committee in interpreting the-effect of the resolution of the State Central; Committee prescribing the qualification of a candidate for the office of District Attor--ney.
In support of his first proposition plain-, tiff urges that his exceptions to the jurisdiction of the District Committee, based upon the failure of Volentine to comply with the requirements of LSA-R.S. 18:-307, subsection B, relating to service of" the objection were improperly overruled: by the Committee.
Subsection B of LSA-R.S. 18:,307 reads-, as follows:
“B. At the time of the filing the-party making the objection! shall file-a certificate with the chairman or the-secretary, in which he shall specifically declare that he has served, ox- *633 cause to be served upon the 'person whose candidacy he is objecting to an exact copy of the protest or objection, and shall state the. time and the place such service was made. The service of the objections and protests shall be personal or domiciliary.”
It is urged that the requirements of the above section were not observed by Volen-tine, and as a consequence that the District Committee was without jurisdiction to consider the objection. This point has been presented to us in argument and brief of plaintiff’s counsel under the designation of:
“An Exception To The Jurisdiction Ratione Materiae, Or No Cause Of Action And Of No Right Of Action.”
We proceed to a discussion of the issue tendered, noting, however, that the record fails to disclose the filing of any exception of no cause and no right of action, which expression therefore we assume to be a matter of argument rather than a delineation of pleading.
Since, under the provisions of the statute, LSA-R.S. 18:307, the Democratic District ■Committee is specifically authorized and directed to hear and determine the merits of objections, we do not perceive any real, .ground upon which an exception to the jurisdiction, ratione materiae, of the said committee could be predicated, and, therefore, we think plaintiff’s exceptions should be considered as being in the nature of exceptions to service and citation and the consequent jurisdiction ratione personae. Further, we are persuaded that plaintiff’s rights to relief are in nowise prejudiced by this interpretation.
It is obvious that plaintiff’s objection to Volentine’s failure to comply with the statutory requirement bearing upon the certificate accompanying the objection to candidacy is extremely technical under the unquestioned facts established in this case. The testimony is convincing on the point that the objection raised to plaintiff’s candidacy came as no surprise, and, in fact, had been anticipated by plaintiff, who had discussed the point with friends, brother lawyers,-and party officials on a number of occasions over a considerable period of time prior to his actual filing of notice of candidacy. It is also established that plaintiff did absent himself from LaSalle Parish and proceed to Memphis, thence to Shreve-' port, or vicinity. While it is not shown that this action on the part of plaintiff was designed in any sense for the purpose of preventing or obstructing service, it must necessarily be justly concluded' that these movements were not undertaken with a view to facilitating the service of any objection to plaintiff’s'candidacy. Confronted with the fact of plaintiff’s absence, the testimony is more than sufficient to establish the diligence of Volentine and his counsel in attempts to definitely ascertain plaintiff’s whereabouts. Contact with plaintiff’s bróther-in-law in Memphis appears to have produced only the somewhat vague information that plaintiff was just “moseying around” over the country without any fixed destination or schedule. It was also established that the office of plaintiff’s attorney in Shreveport was contacted and a call was left for plaintiff, which apparently was either not conveyed to or was disregarded by plaintiff. It is further worthy of consideration that plaintiff’s attorney was aware of the filing of the objection and that he accompanied plaintiff’s wife to Olla on May 30th in advance of plaintiff.
We point out that in all matters concerning or affecting a candidacy for office the time element is of essential importance. Recapitulating the chronological elements; the time for filing notice of candidacy expired May 24th; the time for filing objections expired May 29th. If Volentine had awaited plaintiff’s return to his domicile in LaSalle Parish in order to file a certificate, strictly and precisely complying with the requirements of statute, his objection would have been null and ineffective as coming too late. Certainly, he did everything within reason, and, finally, his effort at service was more than diligent, inasmuch as he availed himself of three methods of notification, by directing exact copies of his objection by mail to plaintiff’s post office box in Olla; by delivery to plain* *634 tiff’s office, and by delivery to plaintiff’s borne.
We are completely satisfied that Volen-tine’s certificate fulfilled the clear purpose and intention of the statutory provision, and that strict compliance was prevented not by any omission on the part of Volen-tine but by the actions of plaintiff himself. Certainly plaintiff’s rights have not been prejudiced nor impaired in the slighest degree.
We think the points raised by plaintiff in this connection were conclusively disposed by the Supreme Court in State ex rel. Dunshie v. Fields, 164 La. 954, 115 So. 45, 46, from which we quote as follows:
“As relates to the exception to the jurisdiction of the committee, it should be observed that section 13 of the Primary Election Law (Act 97 of 1922) fixes a time within which notice of intention to become a candidate shall be filed, and since the statute fixes such a time it would seem that some duly constituted body should have power to determine whether the notice was filed in time. The appropriate body to determine this is the committee calling the election, its ruling being subject to review by the courts, when the ruling is to the effect that the notice was not timely filed, as provided in other instances, in section 11 of the act.
“As relates to the exception with reference to the service, relator having appeared not only for the purpose of excepting to it, but also, in the same pleading, for the purpose of excepting to the jurisdiction of the committee, we think that he thereby waived any defect there might have been in the service. Moreover, since defendant was actually heard by the committee and has since had full opportunity to present the entire case to the courts de novo, he has suffered no injury because of defectiveness in the service, if any existed. See Zer-lin v. Louisiana Real Estate Board, 158 La. 111, 103 So. 528.”
'Counsel for plaintiff contests the applicability of the Dunshie case on the ground that the statutory provisions have been, changed. While this is true, we do not. think the change in anyway has affected, the validity of the authority of the principle-enunciated with reference to the issue presented in the instant case.
 With reference to plaintiff’s second contention involving the interpretation of the resolution of the State Central Committee, we think the proposition may be specifically tendered by the following question:
Did the resolution of the Democratic State Central Committee of date October 2, 1951, providing that candidates should be eligible under any special qualifications for office prescribed by the Constitution or Laws' of the State, require the possession of such qualifications as of the time of candidacy or the time of election to office?
Stated with reference to the facts of the-instant case, the question may be phrased as follows:
Was plaintiff, Sanders, qualified to-become a candidate for the Democratic nomination for the office of District Attorney, under the resolution of the Democratic State Central Committee, at a primary election to be held July 27, 1954, when he would not be-qualified to hold the office under the provision of Section 59 of Article 7 of the Constitution of 1921 until August 1, 1954?
We think the question has been answered, by the holding of our brethren of the Orleans Court in Yuratich v. Plaquemines Parish Democratic Executive Committee, 32 So.2d 647, 650.
In the cited case the candidacy of plaintiff, Yuratich, for nomination as police juror of a ward of Plaquemines Parish, *635 was opposed by an objection of one Jas-priza on the ground that Yuratich did not ■own property assessed in the amount of not less than $250.00, as required by law and by a resolution of the Democratic State Central Committee. This requirement of the State Central Committee’s resolution there under consideration was identical with the requirement of the resolution of ■October 2, 1951, with which we are here concerned, both provisions reading as follows:
“ ‘Each candidate shall be eligible under the special qualifications (if any) prescribed by the Constitution .and laws for the office for which he is ■a candidate.’ ”
It is further evident from a reading of Judge Janvier’s opinion in the Yuratich case that the same arguments were presented on behalf of the candidate as have been urged in the instant case. The .several issues were thoroughly considered, and, in our opinion, correctly resolved. We quote the following extracts from the opinion:
“As we read the statute and the 'Constitution, we think that they give to the political party, which can act only through its committee, the right to establish such reasonable conditions as the said party, through its committee, may see fit to impose, and that persons who desire its nomination must comply with those requirements. The act (section 27) specifically gives to the committee the right to prescribe ‘further qualifications’ than those required by ‘the Constitution and election laws.’ ”
******
“We think then that the Democratic State Central Committee was within its legal right in providing that one who might desire to enter its primary as a candidate for its nomination should ‘be eligible under the special qualifications (if any) prescribed by the Constitution and laws for the office for which he is a candidate.’
“We pass then to the contention of the contestee that he need not be called upon to show that he could comply with this property requirement at the time he filed his declaration of intention to enter the primary; that that requirement can not be imposed upon him until, if he should be elected, he presents himself to take over the office.
“Counsel say that this is in truth a requirement of law and not of the committee; that this law, Act No. 94 of 1894 [LSA-R.S. 33 :1225], applies only to the eligibility of the person to take office at the time he attempts to do so, and does not in any way contemplate that he must be able to comply with the requirement of this statute when he attempts to enter the primary. And they say that this was held by our Brothers of the First Circuit in Migeot v. Barrilleaux, La.App., 166 So. 157.”
After a discussion of the Migeot case the opinion declared:
“That case, therefore, affords little help in the present controversy. Later decisions, however, of that same Court plainly express the view that where a political party imposes legal requirements as a condition precedent to entering into a primary, those requirements must be complied with at the time of filing the declaration to enter the primary, and that it will not do to say that the person who desires to enter may do so and it will be sufficient, if he is elected, to then take the necessary steps to make himself eligible.”
The conclusion of the court in the Yura-tich case embodied an enunciation of a principle which we think is controlling in the instant case, and was expressed by the court as follows:
“Our conclusion is that the Democratic State Central Committee had the legal right to require that as a condition precedent any person desiring to enter the primary, as a candidate for nomination should have the legal qualifications which he would be required to have in *636 order to take office. We conclude that the resolutions adopted by the committee can not be interpreted otherwise than as a requirement that one who offers himself as a candidate for the position of Police Juror must be able to show himself qualified in accordance with Act No. 94 of 1894. And we further conclude that since the requirement was legal and was made by the committee as a condition precedent to entering into the party primary, the committee correctly held that compliance therewith should have been shown as of the time of the declaration of intention to enter the primary.” (Emphasis supplied.)
We think it necessary to notice the argument which is advanced to the effect that the Yuratich case is distinguishable on the ground that the lack of the qualification therein considered was a matter that could be supplied only by positive and affirmative action of the candidate himself, whereas in the case before us the qualification wilí be automatically supplied by the passage of time. Such a contention entirely neglects to take into consideration the principal purpose of the resolution of the State Central Committee. This resolution is comprehensive in its nature and was quite obviously designed and adopted for the purpose of establishing qualifications of all candidates for nomination by the Democratic Party primary for any office, and was not limited to any certain and particular political offices. This is to say that the qualifications as established by the resolution of the committee apply equally to candidates for membership upon police juries and to candidates for district offices such as district attorney or district judge.
If the Yuratich case should be interpreted in accord with the argument above suggested, then it would be necessary for us to conclude that the resolution' of the State Central Committee,' when construed with reference to the qualifications of a candidate for member of a police jury, means he must possess the qualification .fixed by law, Act No. 94 of 1894, requiring the ownership of property of an assessed value of not less, than $250.00, at the time of his candidacy, but a candidate for the office of district attorney need possess the qualification fixed by the constitution, Article 7, Section 59, requiring the practice of law in the state for at least three years, only at the time of assuming the office. We submit that such a hair-splitting distinction is utterly unsound and is an attempt to read into the wording and purpose of the resolution a meaning that was not intended.
Finally, we are impressed with the fact that considerable weight should be given by courts to the interpretation accorded by regularly established committees of the party concerned, and the actions of such committees, in our opinion, should not be disturbed unless they are clearly unreasonable or arbitrary.
For the reasons assigned the judgment from which appealed is affirmed at appellant’s cost.
GLADNEY, J., dissents.